2013 Ark. 56

**Karl Douglas ROBERTS, Petitioner**

v.

**STATE of Arkansas, Respondent.**

**No. CR 02–22.**

Supreme Court of Arkansas.

Feb. 14, 2013.

Deborah Anne Czuba, for appellant.

Dustin McDaniel, Att'y Gen., by: Laura Shue, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice.

Petitioner Karl Douglas Roberts petitions this court to recall its mandate issued after our mandatory review of Roberts's conviction and sentence in *Roberts v. State,* 352 Ark. 489, 102 S.W.3d 482 (2003). Roberts raises two allegations in support of his petitions. First, he alleges that this court's affirmance of his death sentence

was directly contrary to this court's holding in *Miller v. State,* 2010 Ark. 1, 362 S.W.3d 264, and, thus, there has been a defect or breakdown in the appellate proceedings that warrants recall of the mandate. Second, Roberts argues that the waiver of his postconviction rights was invalid and this court's affirmance of that invalid waiver also constitutes a defect or breakdown in the appellate process warranting recall of the mandatory-review mandate. Roberts has also filed a petition to reinvest the circuit court with jurisdiction to consider a petition for writ of error coram nobis based on allegations that the State withheld evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 |₂(1963). As Roberts is under a sentence of death, our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(a)(2) (2012). For the reasons set forth herein, we deny both petitions.

The relevant facts are set forth in *Roberts v. State,* 2013 Ark. 57, 426 S.W.3d 372, handed down this same day. Accordingly, we turn to the merits of the petitions at issue here, beginning with Roberts's petition to recall this court's mandatory-review mandate. In support of his petition, Roberts argues that there was a breakdown in the appellate process in two regards. First, Roberts asserts that a breakdown occurred in his case where this court affirmed his death sentence because such affirmance is directly contrary to this court's subsequent opinion in *Miller,* 2010 Ark. 1, 362 S.W.3d 264. According to Roberts, his case is on all fours with this court's decision in *Miller,* wherein we reversed the appellant's death sentence because of the admission of improper victim-impact testimony. Second, Roberts argues that his waiver of postconviction review was invalid on numerous grounds, and this court's approval of that invalid waiver is a defect or breakdown in the appellate process. According to Roberts,

recalling and reentering the mandatory-review mandate is the remedy that is necessary to restore him to the status quo.

The State counters that Roberts has failed to show any error in the admission of victim-impact testimony or that this court failed to discover such an error and, therefore, he cannot demonstrate that there was breakdown in the appellate process. The State further argues that because Roberts failed to show any defect in the direct-appeal process, this court should decline his invitation to recall the mandatory-review mandate.

■ |₃This court will recall a mandate and reopen a case only in extraordinary circumstances. *See, e.g., Robbins v. State,* 353 Ark. 556, 114 S.W.3d 217 (2003). There have been four cases thus far that demonstrated such extraordinary circumstances. In *Robbins,* we recalled the mandate because (1) Robbins cited to a decision "on all fours legally" with the issue presented; (2) federal-court proceedings had been dismissed because of an unexhausted state-court claim; and (3) it was a death-penalty case, which required heightened scrutiny. *Id.* at 564, 114 S.W.3d at 222–23. In making that decision, we noted that there were unique circumstances that made the case "one of a kind, not to be repeated." *Id.,* 114 S.W.3d at 223. However, in a separate case, this court also found that the intoxication and subsequent impairment of Rule 37.5 counsel constituted a defect in the appellate process that warranted recalling the mandate from our affirmance of the denial of Rule 37 relief. *See Lee v. State,* 367 Ark. 84, 238 S.W.3d 52 (2006). In *Wooten v. State,* 2010 Ark. 467, 370 S.W.3d 475, we found that the lack of verification of Wooten's Rule 37 petition constituted a defect or breakdown in the appellate process that required a recall of the mandate. And, most recently,

in *Williams v. State*, 2011 Ark. 534, 2011 WL 6275536, this court recalled the mandate from Williams's direct appeal after reviewing the forms for mitigators and aggravators and concluding that the jury eliminated from its consideration all evidence presented of mitigating circumstances and sentenced Williams to death based solely on the aggravating circumstance, which constituted reversible error. This court acknowledged that the error was not discovered during Williams's direct appeal and, as such, constituted a defect or breakdown in the appellate process. *Id.*

■ The question here, then, is whether we are presented with extraordinary circumstances that warrant a recall of the mandate. We have explained the necessary criteria to establish such extraordinary circumstances that warrant a recall of the mandate and refer to them as the *Robbins* factors. *Lee*, 367 Ark. 84, 238 S.W.3d 52. The factors are as follows: (1) the presence of a defect in the appellate process, (2) a dismissal of proceedings in federal court because of unexhausted state-court claims, (3) the appeal was a death case that required heightened scrutiny. *Wooten*, 2010 Ark. 467, 370 S.W.3d 475.

■ In order to address Roberts's first alleged basis for relief, we turn to this court's decision in *Miller*, 2010 Ark. 1, 362 S.W.3d 264, where the appellant argued that the circuit court erred in allowing two victim-impact witnesses to tell the jury that they wanted Miller to receive the death sentence. According to the appellant, this resulted in a violation of his Eighth Amendment right to a fair trial and his Fourteenth Amendment due-process rights under *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). In addressing the appellant's argument, we stated as follows:

Turning now to the merits of this argument, we note that in *Greene v. State*, 343 Ark. 526, 37 S.W.3d 579 (2001), this court held that it was not proper for witnesses to tell the jury what the appropriate penalty should be. This court stated, "[w]e conclude that penalty recommendations from family members of the victim are not relevant as victim-impact evidence." *Id.* at 535, 37 S.W.3d at 586. Key to this conclusion was this court's observation that such testimony would interfere with and be irrelevant to a jury's decision on punishment. Thus, based on *Greene*, we conclude, as the State concedes, that it was error for Ray Barr and Linda McCormack to testify that they desired the jury to impose the death sentence. We further conclude that this testimony was clearly contrary to *Payne*, 501 U.S. 808, 111 S.Ct. 2597, and resulted in a violation of Miller's Eighth Amendment rights. Family members of the victim may testify about the victim and the emotional impact of the victim's death on the family; however, they may not state "characterizations and opinions about the crime, the defendant, and the appropriate sentence." *Parker v. Bowersox*, 188 F.3d 923, 931 (8th Cir.1999) (quoting *Payne*, 501 U.S. at 830 n. 2, 111 S.Ct. at 2611).

*Id.* at 34, 362 S.W.3d at 285. Clearly, our holding in *Miller* that the victim-impact testimony was improper and violated the appellant's constitutional rights was the result of the two witnesses specifically requesting that the jury impose the death penalty. That is not the situation here.

Here, while there was testimony about the crime being brutal or evil, there was never testimony as to which sentence was appropriate. Rebecca DeMauro, Andria's mother, testified that

[t]he effects of this brutal crime has had on me and my family is devastating. . . . Andi was a beautiful person who did not deserve the evil that befell her. . . . Because of this horrendous crime, my daughter not only lost her life but she will never go to junior high or high school.

Ann Taylor, Andria's grandmother, testified similarly that "we can't trust our own family members around our innocent children. This is what has been instilled in our lives because of this evil act."

During the testimony of Christopher DeMauro, Andria's stepfather, Roberts objected when DeMauro testified that "[a]s a result of the horrible crime that happened to Andi, my family will never be the same." His response was to a question by the prosecutor about how the murder had impacted Andi's family. The following colloquy then took place at the bench:

By [Defense Counsel]: Your Honor, it was your ruling that the victim impact that would come into this case and they would not make comments about the crime, the circumstances of the crime. This witness just made a comment about the horrible nature of the crime. I have to make a motion for a mistrial based on that.

By The Court: You've had this haven't you?

By [Defense Counsel]: Yes, Your Honor. It was my understanding there was not going to be any comment on the nature of the crime.

By The Court: What do you have in front of you?

By [Defense Counsel]: This is a written statement of the Defendant—I'm sorry, of the witness.

By [The Prosecutor]: Your Honor, he was not stating the details of the crime or commenting about the crime, but he's talking about the results of this crime.

By The Court: I think everyone here knows quite frankly it was a horrible crime was committed. Do you want an admonishment or anything? Can you think of anything I could say?

By [Defense Counsel]: Yes, Your Honor. I think I've got to ask that the jury be advised that in light of that they should ignore or set aside the previous comment regarding the horrible nature of the crime.

By [The Prosecutor]: The horrible crime or the horrible nature of the crime. It is actually phrased "horrible crime," not "horrible nature of the crime."

By The Court: I'm sorry, I don't understand you.

By [The Prosecutor]: The phrase, Your Honor, [defense counsel] said, "the horrible nature of the crime," and that's not what he testified to. He said, "a horrible crime."

By The Court: I don't think there's anything I could say that could help it.

By [Defense Counsel]: Okay.

By The Court: I don't see any error. Thank you.

In sum, the victim-impact testimony was not akin to the prejudicial testimony elicited in *Miller*. There, we specifically held that "[e]rror occurred in this case when not one but two of the victims' family members recommended to the jury that they impose the death sentence." *Id.* at 36, 362 S.W.3d at 286. We further concluded that "it is a practical impossibility for us on appellate review to judge the impact on the jury's decision to impose the death sentence of these erroneously admitted requests by two of the victims' family members." *Id.* Roberts is simply incorrect when he states that his case is legally on all fours with our decision in *Miller*.

Even looking more generally at Roberts's contention that this testimony constituted an improper characterization of the crime and that this court's failure to discover the error in its admission resulted in a breakdown of the appellate process, such an argument is without merit. The Supreme Court in *Payne* stated as follows:

> We thus hold that if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.

501 U.S. at 827, 111 S.Ct. 2597. Likewise, this court has held that victim-impact evidence is relevant evidence that informs the jury of the toll the murder has taken on the victim's family. *Thomas v. State*, 370 Ark. 70, 257 S.W.3d 92 (2007). We have further explained that

> [i]n considering what the State may offer as relevant victim-impact testimony, we look to the Supreme Court's holding in *Payne* where it stated the following:
>
> ⌊₈We are now of the view that a State may properly conclude that *for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant.* "[T]he State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family. (Emphasis added.)

*Hicks v. State*, 327 Ark. 727, 729–30, 940 S.W.2d 855, 856 (1997).

In reviewing the testimony challenged by Roberts, it is evident that the family members were testifying about the effects that Andria's murder had on the family. They did not request the death penalty, as did the witnesses in *Miller*, nor can it be said that their testimony inflamed the passions of the juror, such that it calls into question the imposition of the death sentence. As to the cases from other jurisdictions cited by Roberts, they are of no import in deciding the issue of whether to recall our mandatory-review mandate. We have explained that when examining the first *Robbins* factor this court has "determined that it had the inherent authority and jurisdiction to recall its own mandate in a death-penalty case where a defendant alleged an error *that was identical to an error in another capital case for which the same court had recently granted relief.*" *Wooten*, 2010 Ark. 467, at 6–7, 370 S.W.3d 475, 478 (quoting *Wooten v. Norris*, 578 F.3d 767, 783 (8th Cir.2009) (emphasis added)). Thus, any reliance on cases other than those decided by this court have no bearing on our review of the first *Robbins* factor.

⌊₉Although Roberts's federal-court proceedings have been stayed indefinitely, and this case involves a sentence of death, Roberts has not demonstrated that he is entitled to the requested relief based on his allegation of error in the admission of victim-impact testimony. Stated simply, he has not demonstrated extraordinary circumstances resulting in a defect in the appellate process that warrants recall of this court's mandatory-review mandate.

For his second basis in support of the instant petition, Roberts argues that this court should recall the mandatory-review

mandate because this court's approval of his invalid waiver of postconviction relief is a defect or breakdown in the appellate process that warrants such a recall. Roberts asserts that a recall of the mandatory-review mandate is necessary in order to return him to the status quo and to provide him with time to file a Rule 37 petition. In support of his request that the mandate be recalled, Roberts raises the following arguments: (1) there was no relevant or contemporaneous mental evaluation, (2) no one advocated that he was incompetent during the waiver hearing, (3) the circuit court's waiver colloquy failed to establish that his waiver was knowing and intelligent, (4) he was mentally incompetent at the time of the waiver and his waiver was involuntary, (5) the denial of postconviction review on procedural grounds would not rest on solid footing, and (6) the mandatory-capital-appeal doctrine should be extended to provide for mandatory Rule 37.5 review.

We decline Roberts's request to recall the mandatory-review mandate based on his allegation that there was an alleged breakdown in the postconviction process. The arguments raised in support of this contention are the same arguments raised and decided in the companion case handed down this same day. *Roberts,* 2013 Ark. 57, 426 S.W.3d 372. Accordingly, we deny Roberts's petition to recall our mandatory-review mandate.

We turn now to Roberts's petition to reinvest jurisdiction in the circuit court to consider a writ of error coram nobis. Regardless, whether this court chooses to recall its mandate from the mandatory direct review, Roberts asserts that we should grant his petition to reinvest jurisdiction in the circuit court. As grounds for issuance of the writ, Roberts alleges that he has stated a possible *Brady* violation that warrants the granting of his petition.

The three alleged *Brady* violations raised by Roberts are that (1) the State withheld evidence of eleven traffic tickets Roberts had received, (2) the State withheld evidence that Roberts could only earn $28,000 per year, and (3) the State withheld evidence that Roberts's polygraph results had been inconclusive. Finally, Roberts avers that any diligence challenge raised by the State is not proper, as the question of diligence in bringing a *Brady* claim is a matter to be resolved in the first instance by the circuit court.

The State does in fact argue that Roberts has not been diligent in bringing these claims. Specifically, the State asserts that Roberts did not make any withheld-evidence claims in federal court in 2004 and delayed bringing this application to this court for four years after he had allegedly discovered the facts supporting his allegations. Moreover, the State asserts that Roberts's petition should be denied because his claims supporting the petition are meritless.

We note at the outset that coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Howard v. State,* 2012 Ark. 177, 403 S.W.3d 38. A writ of error coram nobis is an extraordinarily rare remedy, more known for its denial than its approval. *Id.* In order for the writ to issue following the affirmance of a conviction and sentence, the petitioner must show a fundamental error of fact extrinsic to the record. *Id.* The function of the writ is to secure relief from a judgment rendered while there existed some fact which would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of judgment. *Id.*

The writ is issued only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* We have held that a writ of error coram nobis is available to address certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Id.* Where the writ is sought after the judgment has been affirmed on appeal, the circuit court may entertain the petition only after this court grants permission. *Echols v. State,* 354 Ark. 414, 125 S.W.3d 153 (2003). This court will grant such permission only when it appears the proposed attack on the judgment is meritorious. *Id.* In making such a determination, we look to the reasonableness of the allegations of the petition and to the existence of the probability of the truth thereof. *Id.*

We first address the diligence argument raised by the State. While there is no specific time limit for seeking a petition for a writ of error coram nobis, due diligence is required in filing a petition for relief, and in the absence of a valid excuse for delay, the petition will be denied. *Howard,* 2012 Ark. 177, 403 S.W.3d 38. Due diligence requires that (1) the defendant be unaware of the fact at the time of trial; (2) the defendant could not have, in the exercise of due diligence, presented the fact at trial; and (3) upon discovering the fact, the defendant did not delay bringing the petition. *Id.*

While we take note of Roberts's contention that the question of diligence is not for this court to decide, we disagree with it in this instance. In *Cloird v. State,* 349 Ark. 33, 76 S.W.3d 813 (2002) (per curiam), we granted a petition to reinvest jurisdiction in the circuit court to consider a petition for writ of error coram nobis where there was an allegation of a *Brady* violation. In so doing, we directed the circuit court to determine whether petitioner had complied with the diligence requirement. *See also State v. Larimore,* 341 Ark. 397, 17 S.W.3d 87 (2000). Roberts now cites to the *Cloird* opinion for the proposition that it is the circuit court, not this court, who considers the diligence issue in the first instance. While it is true that we have directed circuit courts to examine the issue of diligence, we have done so only in those cases where we have granted the petition to reinvest jurisdiction in the circuit court. This court has itself examined the diligence requirement and denied petitions where it was evident that a petitioner failed to proceed diligently. *See, e.g., Echols,* 354 Ark. 414, 125 S.W.3d 153. Even though it was a death-penalty case, this court denied his petition for coram nobis relief where we determined that he had not acted diligently. *See also Scott v. State,* 2010 Ark. 363, 2010 WL 3796227 (per curiam) (holding that in the absence of a valid excuse for delay, a coram nobis petition is subject to denial). Thus, we will address the issue of whether Roberts has pursued his *Brady* claims in a diligent fashion.

In *Echols,* 354 Ark. 414, 125 S.W.3d 153, this court held that the petitioner was not diligent in pursuing claims that he was incompetent to stand trial. In finding that he was not diligent, this court noted that the exhibits and records demonstrated that the defense team was aware of Echols's history of mental treatments at the time of trial. This court further explained that

[t]he medical records upon which [the petitioner] now relies were not only available prior to the date of his trial, they were, in fact, offered by the defense at trial and considered by the jury. His claim that he was not aware, at the

time of his trial, of the extent of his mental problems is not credible, in the face of the evidence to the contrary. *Id.* at 419, 125 S.W.3d at 157.

The discussion of diligence in *Echols* is relevant here, in that Roberts's claims that he was not aware of his own traffic tickets or his own salary are less than credible. Even if we assume that Roberts was unable to keep up with such information, it was certainly available to his defense counsel prior to trial. As such, the first and second diligence requirements cannot be satisfied. As to the issue regarding the score on the polygraph exam, the results of that test would have been available to counsel at trial and any review by an independent examiner could have been done then.

Even were we to ignore Roberts's failure to satisfy the first two requirements and assume that he did not learn of these claims until 2008, as he asserts, Roberts has still failed to diligently pursue his claims. Roberts asserts that like the petitioner in *Newman v. State,* 2009 Ark. 539, 354 S.W.3d 61, he is and has been mentally ill and that should factor into this court's analysis of his diligence. We agree with the State, however, that *Newman* is inapposite because Roberts never presented the instant *Brady* claims to the federal court, like the petitioner in *Newman* did. Moreover, as the State asserts, at the time Roberts filed his Rule 37.5 petition, it should have been known to him that such claims were not cognizable in a Rule 37.5 proceeding, but were cognizable in a coram nobis proceeding. Thus, Roberts's choice to seek Rule 37.5 relief, instead of coram nobis relief, demonstrates a lack of diligence.

Because Roberts failed to proceed with diligence in pursuing coram nobis relief, his petition is denied.

BAKER and HART, JJ., concur.

KAREN R. BAKER, Justice, concurring.

I concur with the majority's decision to deny Roberts's petitions in this case. I write separately because I reach the decision to deny Roberts's petition to reinvest the trial court with jurisdiction to consider a writ of error coram nobis by a different analysis. The majority states that our due diligence discussion in *Echols v. State,* 354 Ark. 414, 125 S.W.3d 153 (2003), is relevant to Roberts's claim, and finds that "Roberts's claims that he was not aware of his own tickets or his own salary are less than credible." However, it is unnecessary to engage in this credibility analysis. Roberts's counsel acknowledged that they were aware of the information concerning Roberts's traffic tickets and salary no later than 2008. Yet, no petition was filed with this court for over four years. The four-year delay demonstrates sufficiently that he did not act with due diligence. Therefore, I too would deny the petitions.

HART, J. joins.