

# SUPREME COURT OF ARKANSAS.

No. CR–04–1207

| | |
|---|---|
| TISHAUN STENHOUSE<br>                PETITIONER<br><br>V.<br><br>STATE OF ARKANSAS<br>                RESPONDENT | **Opinion Delivered** July 21, 2016<br><br>PRO SE PETITION TO REINVEST JURISDICTION IN THE TRIAL COURT TO CONSIDER A PETITION FOR WRIT OF ERROR CORAM NOBIS [PULASKI COUNTY CIRCUIT COURT, NO. 60CR-03-2984]<br><br>PETITION DENIED. |

## PER CURIAM

Petitioner Tishaun Stenhouse is incarcerated in the Arkansas Department of Correction pursuant to a 2004 judgment reflecting his convictions for capital murder and committing a felony with a firearm for which he was sentenced to life imprisonment without parole plus 15 years' imprisonment. This court affirmed his convictions and sentences. *Stenhouse v. State*, 362 Ark. 480, 209 S.W.3d 352 (2005).

Now before this court is Stenhouse's application to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis based on a claim that the prosecutor withheld material exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Stenhouse contends that this evidence would have established that Stenhouse had acted in self-defense at the time he shot the victim, Braylon Gray. In his response to the State's response to his petition, Stenhouse alternatively alleges that had the evidence been disclosed there is a reasonable probability that he would have been convicted of a lesser-

included offense, or that his sentence for capital murder would have been mitigated. Stenhouse further contends that the prosecutor withheld evidence of plea deals that could have been used to impeach the credibility of the State's eyewitnesses—Tiffany Williams and Brandon Landers.

In support of his claim for relief, an affidavit is attached to the petition executed by Tiffany Williams in March 2016 wherein Williams recants her trial testimony in which she stated that Gray was unarmed and walking away from Stenhouse at the time Gray was shot and killed. Instead, Williams avers in the affidavit that Gray was armed, possessed drugs, and was approaching Stenhouse with a gun in hand when Stenhouse fired the fatal shots and that Williams removed Gray's gun as well as the drugs and hid them before the police arrived. According to the affidavit, Williams informed the prosecutor that she had concealed Gray's gun and drugs, and the prosecutor intentionally suppressed this revelation. Williams's affidavit further accuses the prosecutor of securing probation for Williams on felony forgery charges that were pending against her in exchange for Williams's favorable testimony and of deliberately concealing the plea deal. Finally, Williams attests in the affidavit that the prosecutor gave Williams debit cards as well as "Old Navy" gift cards to ensure Williams's continuing cooperation.

Stenhouse further alleges that Brandon Landers was also given a plea deal in exchange for his testimony, which was, likewise, withheld from the defense. In support of this allegation, Stenhouse attaches documents demonstrating Landers's guilty pleas and sentences to possession of controlled substances in August 2003 and October 2003. According to Stenhouse, the lenient sentences imposed as a result of Landers's guilty pleas demonstrate

2

that Landers's testimony was provided in exchange for plea deals that had been concealed from the defense.

We first note that a petition filed in this court for leave to proceed in the trial court where the judgment was entered is necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Roberts v. State*, 2013 Ark. 56, at 11, 425 S.W.3d 771, 778. A writ of error coram nobis is an extraordinarily rare remedy. *Howard v. State*, 2012 Ark. 177, at 4, 403 S.W.3d 38, 42–43. Coram-nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Id.* The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Id.* The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Id.*

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* We have held that a writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Id.*

We are not required to accept the allegations in a petition for writ of error coram nobis at face value. *Goff v. State*, 2012 Ark. 68, at 3, 398 S.W.3d 896, 898 (per curiam). While allegations of a *Brady* violation fall within one of the four categories of fundamental

SLIP OPINION

error that this court has recognized, the fact that a petitioner alleges a *Brady* violation alone is not sufficient to provide a basis for error-coram-nobis relief. *Smith v. State*, 2015 Ark. 188, at 4-5, 461 S.W.3d 345, 349 (per curiam). To establish a *Brady* violation, three elements are required: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. *State v. Larimore*, 341 Ark. 397, 404, 17 S.W.3d 87, 91 (2000).

Assuming that the alleged withheld evidence meets the requirements of a *Brady* violation and is both material and prejudicial, in order to justify issuance of the writ, the withheld material evidence must also be such as to have prevented rendition of the judgment had it been known at the time of trial. *Smith*, 2015 Ark. 188, at 4–5, 461 S.W.3d at 349. To merit relief, a petitioner must demonstrate that there is a reasonable probability that the judgment of conviction would not have been rendered, or would have been prevented, had the information been disclosed at trial. *Id.* Finally, this court has held that recanted testimony is not cognizable in a claim for error-coram-nobis relief. *Jackson v. State*, 2010 Ark. 81, at 2 (per curiam). This is so because a writ of error coram nobis may not be used to contradict any fact already adjudicated. *Smith v. State*, 200 Ark. 767, 768, 140 S.W.2d 675, 676 (1940). Here, Williams recanted her trial testimony over ten years after Stenhouse had been convicted and his conviction had been affirmed on direct appeal.[1] *Stenhouse*, 362 Ark. 480, 209 S.W.3d 352.

---

[1] In his response, Stenhouse contends that Williams's affidavit does not recant her earlier testimony, but merely adds facts that had been intentionally concealed by the

Stenhouse contends in his petition that Williams's affidavit establishes a *Brady* violation entitling him to coram-nobis relief because the allegations contained therein attest to the deliberate suppression of material evidence that was unknown to the defense, which creates a reasonable probability that, had this evidence been disclosed, the result of his trial would have been different. To the extent that Williams's affidavit recanting her testimony has alleged sufficient facts to meet the requirements of a *Brady* violation, the remaining testimony and evidence presented at the trial demonstrates that evidence that Gray was armed, which Williams alleges had been suppressed, would not have changed the outcome of the trial.

The trial record reveals that Williams and Landers were called to testify by the State, and two additional eyewitnesses, Marvin Porter and Angelo Scott, were called by the defense. Williams, together with Landers, Porter, and Scott, testified that Gray had not made verbal threats or behaved aggressively toward Stenhouse, while Williams, Landers, and Porter testified that Gray was unarmed. Porter, a witness for the defense, testified that after Stenhouse fired the first shot, Gray fell face-down on the ground as Stenhouse continued firing his gun. The above-cited testimony was consistent with the physical evidence described by the medical examiner, in that, the examiner testified that the autopsy established that Gray had been shot multiple times in the back and that the trajectory of at least two of the bullets demonstrated that shots had been fired while Gray was lying face-

---

prosecutor, such as the fact that Williams had concealed Gray's gun and drugs. However, that claim directly contradicts Williams's trial testimony that Gray was unarmed.

down on the ground. The remaining physical evidence adduced at trial established that six bullet casings discovered at the scene were fired from the same gun, that the casings matched bullets removed from Gray's body and from the crime scene, and that gunshot residue on Gray's clothing established that at least two bullets were fired at close range or approximately twelve inches from the point of impact. Despite evidence that a nearby street lamp illuminated the area where the shooting occurred, Stenhouse testified that he never saw the gun that Williams now asserts was in Gray's hand. Finally, Stenhouse admitted that he could have retreated during the course of the events that led to Gray's death.

In view of the testimony and evidence recited above, the presentation of Williams's recent account of events would not have changed the outcome of the trial by establishing that Stenhouse fired in self-defense, especially in light of Stenhouse's admission that he did not see a gun in Gray's possession. *See Halfacre v. State*, 277 Ark. 168, 171–72, 639 S.W.2d 734, 736, (1982) (in determining the reasonableness of appellant's plea of self-defense, the relevant issue was not whether the victims had started fights, but whether appellant was aware of such incidents). Finally, Stenhouse's admission that he could have retreated further negates his assertion of self-defense. *See* Ark. Code Ann. § 5-2-607(b) (Repl. 2006).

Stenhouse alternatively contends that disclosure of evidence allegedly suppressed by the prosecutor created a reasonable probability that he would have been convicted of either first-degree murder, second-degree murder, or manslaughter—the lesser-included offenses to capital murder. Again, a review of the testimony and evidence set forth above dispels a reasonable probability that such evidence would have resulted in a conviction of a lesser-included offense that did not include premeditation and deliberation. *See* Ark. Code Ann.

SLIP OPINION

§ 5-10-101(4) (Repl. 1997). This court has held that premeditation and deliberation may be inferred from the type and character of the weapon; the manner in which the weapon was used; the nature, extent, and location of the wounds; and the accused's conduct. *Thornton v. State*, 2014 Ark. 157, at 12, 433 S.W.3d 216, 222–23 (citing *Robinson v. State*, 363 Ark. 432, 214 S.W.3d 840 (2005)). Evidence of multiple close-range gunshots is consistent with a conclusion of premeditation and deliberation. *See id.* (citing *Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004)). Findings of premeditation have been upheld in cases where the evidence showed that a victim was shot multiple times from behind. *See id.* (citing *Farris v. State*, 308 Ark. 561, 826 S.W.2d 241 (1992)).

Williams's subsequent statement recanting her testimony that Gray was unarmed does not establish that Gray's murder was justified, nor does it refute evidence establishing that Stenhouse acted with premeditation and deliberation when he shot Gray multiple times in the back and at close range. *See Taylor v. State*, 303 Ark. 586, 594, 799 S.W.2d 519, 524 (1990) (recanted testimony would not have dispelled evidence of the appellant's involvement in the crime and resulted in a different verdict). Moreover, Stenhouse's assertion that evidence that Gray was armed would have mitigated his sentence for the crime of capital murder is without merit because capital murder carries only two possible sentences: death or life without parole. Ark. Code Ann. § 5-(10)?-101(c) (Repl. 1997); Ark. Code Ann. § 5-4-601(3) (Repl. 1997).

Stenhouse's contention the prosecution concealed plea deals made in exchange for favorable testimony from Landers and Williams is equally unavailing. To warrant coram-nobis relief, the defendant must be unaware of the fact at the time of trial and could not have

discovered the fact in the exercise of due diligence. *See Echols v. State*, 354 Ark. 414, 419, 125 S.W.3d 153, 157 (2003). The trial record reveals that the defense had been provided with an opportunity to review the criminal records of the State's witnesses prior to trial but had never taken advantage of the offer. Moreover, the defense was made aware that Williams had been given probation for the forgery offenses and chose not to recall Williams and inquire about any plea deals made in exchange for her testimony despite the trial court's ruling that it would have allowed Williams to be recalled for this purpose. Defense counsel could also have questioned Landers about convictions described in his testimony as well as any plea deals made in connection with those convictions. Furthermore, the circumstances surrounding Landers's convictions could have been discovered prior to trial had the defense reviewed Landers's criminal history. For the same reasons that are set forth above, Stenhouse further fails to establish that evidence of these alleged plea deals would have discredited the testimony of Williams and Landers to the extent that the rendition of the judgment would have been prevented. *Howard*, 2012 Ark. 177, at 4, 403 S.W.3d at 42–43; *Thomas v. State*, 367 Ark. 478, 482, 241 S.W.3d 247, 250 (2006) (per curiam).

Petition denied.