SLIP OPINION

Cite as 2017 Ark. 121

# SUPREME COURT OF ARKANSAS.
No. CR-96-270

| | | |
|---|---|---|
| JESSIE E. HILL | | **Opinion Delivered** April 6, 2017 |
| | PETITIONER | PRO SE SECOND PETITION TO REINVEST JURISDICITON IN THE TRIAL COURT TO CONSIDER A PETITION FOR WRIT OF ERROR CORAM NOBIS; MOTION FOR WRIT OF AUDITA QUERELA |
| V. | | |
| STATE OF ARKANSAS | RESPONDENT | [GRANT COUNTY CIRCUIT COURT, NO. 27CR-95-38] |
| | | PETITION DENIED; MOTION DENIED. |

**PER CURIAM**

Petitioner Jessie E. Hill is incarcerated in the Arkansas Department of Correction pursuant to a judgment entered on September 18, 1995, in Grant County, which reflects a conviction for capital murder for which he was sentenced to life without parole. This court affirmed the judgment. *Hill v. State*, 325 Ark. 419, 931 S.W.2d 64 (1996). Hill was subsequently convicted of first-degree murder pursuant to a judgment of conviction entered in Ouachita County and was sentenced as a habitual offender to 720 months' imprisonment to be served consecutively to the life sentence. No appeal was taken from the Ouachita County judgment, as Hill's pro se motion to file a belated appeal was denied. *Hill v. State*, CR-96-710 (Ark. Nov. 4, 1996) (unpublished per curiam).

Hill subsequently pursued multiple postconviction remedies without success, including two petitions for a writ of error coram nobis. *Hill v. State*, CR-96-270 (Ark.

SLIP OPINION

Mar. 13, 2008) (unpublished per curiam) (denying petition to reinvest jurisdiction in the Grant County Circuit Court to consider a petition for a writ of error coram nobis); *Hill v. State*, 2013 Ark. 383 (per curiam) (affirming denial of petition for a writ of error coram nobis by the Ouachita County Circuit Court).

Now before this court is Hill's second petition to reinvest jurisdiction in the trial court to consider a writ of error coram nobis in the Grant County case. In his latest petition for the writ, Hill alleges that the prosecutor withheld exculpatory evidence with respect to the Grant County conviction for capital murder as well as in the Ouachita County conviction for first-degree murder.[1]

We first note that a petition filed in this court for leave to proceed in the trial court where the judgment was entered is necessary after a judgment has been affirmed on appeal because, in that case, the trial court can entertain a petition for writ of error coram nobis only after we grant permission. *Roberts v. State*, 2013 Ark. 56, at 11, 425 S.W.3d 771, 778. Because there was no appeal from Hill's conviction in Ouachita County for first-degree murder, it is not necessary for Hill to obtain permission from this court to file a petition for a writ of error coram nobis in the Ouachita County Circuit Court. Thus, Hill's allegations pertaining to his conviction for first-degree murder in Ouachita County will not be considered or addressed by this court.

---

[1] On December 29, 2016, Hill tendered a pleading entitled "Concise Statement" wherein he alleged that "Grant County officials had intentionally removed" certain exhibits that had been attached to his coram nobis petition. A review of Hill's petition demonstrates that thirty-two exhibits were attached to his petition. The petition and all thirty-two exhibits were filed by the clerk of this court and submitted to this court for review.

SLIP OPINION

As stated above, this is Hill's second petition for coram nobis relief with respect to his conviction for capital murder. In his first petition, Hill alleged that the prosecutor had withheld evidence and failed to disclose the identification of certain witnesses. We denied the petition primarily because Hill had failed to specifically identify what evidence had been allegedly withheld. *Hill*, CR-96-270, slip. op. at 1. In this second petition, Hill again alleges entitlement to coram nobis relief based on allegations that the prosecutor withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In support of his claim, Hill elaborates on the allegations set forth in his first coram nobis petition and identifies the evidence that was allegedly withheld by the prosecutor and investigators.

Before addressing Hill's allegations in support of his *Brady* claim, it is necessary to set forth a summary of the testimony and evidence adduced at Hill's trial that supported his conviction for capital murder. In so doing, this court takes judicial notice of the testimony and evidence contained in the record that was lodged in this court in connection with Hill's direct appeal. *Davis v. State*, 2013 Ark. 118, at 3 (per curiam).

A review of the trial record reflects that Hill's accomplice, Demarcus Tatum, testified and described the events surrounding the crime. According to Tatum's testimony, Hill and Tatum went to the home of Donny Ray Moss on the evening of January 17, 1995, and asked to borrow a Nissan automobile owned by Donald Thrower. Thrower refused to let them borrow his car but agreed to allow his cousin, Arbrady Moss, to drive Hill and Tatum to the bus station in Camden. Tatum testified that while on route, Hill demanded that Moss give him the automobile, and, when Moss refused, Hill struck Moss in the head with a marble rolling pin that was found on the floorboard of the Nissan. After the initial assault,

SLIP OPINION

Moss was left in a roadside ditch, and Hill and Tatum drove away. However, after driving a short distance, Hill and Tatum returned to retrieve Moss and placed Moss in the Nissan's trunk. Thereafter, Hill and Tatum stopped to dispose of Moss's body on Cohen Trial in Grant County. When Moss was found to be still alive, Hill lifted Moss from the trunk and beat him with a glass juice bottle. Moss was left on the side of Cohen Trial, and Hill and Tatum decided to drive the car to Cedar Rapids, Iowa. The Nissan broke down near Adair, Oklahoma, where Hill and Tatum sold it to a local garage for $150.00. Hill and Tatum used the proceeds from the sale of the Nissan to buy bus tickets to Kansas City. Upon arriving in Kansas City, they had no money and no transportation, and they decided to steal a car. To this end, they assaulted and stabbed a woman near her car in a parking garage and took her purse and car keys. When a security guard in the parking garage came on the scene, Hill and Tatum ran back to the bus station, where they were apprehended.

The testimony of Tatum was corroborated by the testimony of Bob Adams, the Sheriff of Grant County, who stated that Moss's body was found on January 19, 1995, two days after Moss was last seen in the company of Hill and Tatum. According to Sheriff Adams, the Nissan had been impounded in Oklahoma and searched. A considerable amount of blood was found in the trunk, together with a tooth similar to a tooth missing from Moss's body, a rolling pin that was covered with hair and with what appeared to be dried blood, and an ashtray that was also covered in blood. Crime-lab analysis revealed that blood on the rolling pin matched the victim's blood type and the ashtray contained Moss's bloody fingerprint. Witnesses employed at the garage in Oklahoma identified Hill and Tatum as the two men who sold the Nissan. The victim's brother testified that he last saw the victim

leaving with Hill and Tatum to drive them to the Camden bus station. The medical examiner testified that Moss had died as a result of blunt force trauma to the head, and further stated that blows to the jaw had knocked out teeth from Moss's upper and lower jaw.

Hill contends that he is entitled to coram nobis relief because the prosecutor withheld the following exculpatory evidence: (1) an August 28, 1995 report from the Arkansas Crime Laboratory that identified a latent fingerprint on the rolling pin, which could not be connected to either Hill or Tatum; (2) hairs collected from the Nissan, which included two Caucasian hairs, that did not match the victim's hair; (3) a handwritten investigative note dated January 23, 1995, that included a witness statement that Moss was last seen alive on January 12, 1995, rather than on January 17, 1995. Finally, Hill contends that the State collected blood, fluid, and fiber evidence that had not been subjected to forensic analysis, because investigators were determined to convict Hill for the crime and refused to develop evidence implicating other suspects.

A writ of error coram nobis is an extraordinarily rare remedy. *Howard v. State*, 2012 Ark. 177, at 4, 403 S.W.3d 38, 42–43. Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Id.* The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Id.* The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Id.*



The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* We have held that a writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Id.*

We are not required to accept the allegations in a petition for writ of error coram nobis at face value. *Goff v. State*, 2012 Ark. 68, at 3, 398 S.W.3d 896, 898 (per curiam). While allegations of a *Brady* violation fall within one of the four categories of fundamental error that this court has recognized, the fact that a petitioner alleges a *Brady* violation alone is not sufficient to provide a basis for error-coram-nobis relief. *Stenhouse v. State*, 2016 Ark. 295, at 3–4, 497 S.W.3d 679, 682 (per curiam). To establish a *Brady* violation, three elements are required: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. *State v. Larimore*, 341 Ark. 397, 404, 17 S.W.3d 87, 91 (2000). Furthermore, assuming that the alleged withheld evidence meets the requirements of a *Brady* violation and is both material and prejudicial, in order to justify issuance of the writ, the withheld material evidence must also be such as to have prevented rendition of the judgment had it been known at the time of trial. *Smith v. State*, 2015 Ark. 188, at 4–5, 461 S.W.3d 345, 349 (per curiam). To merit relief, a petitioner must demonstrate that there is a reasonable probability

that the judgment of conviction would not have been rendered, or would have been prevented, had the information been disclosed at trial. *Id.*

In support of his claims for relief, Hill attaches to his petition numerous handwritten and typewritten reports generated by the Arkansas Crime Laboratory that recorded and listed the evidence submitted and analyzed. Hill first alleges that the prosecution withheld an August 28, 1995 crime-laboratory report reflecting that a latent fingerprint was recovered from the rolling pin that did not match either Hill or Tatum. Hill contends that this report exonerates him.

A review of the trial record demonstrates that discovery matters were addressed at length in a pretrial hearing conducted on September 13, 1995, to consider a motion for continuance filed by the defense. During the course of the hearing, it was revealed that defense counsel had reviewed the investigative file on at least three or four occasions and had met with the prosecutor and the chief investigator, Sheriff Adams, on September 6, 1995, in a meeting where the entire investigative file was provided to defense counsel for review. Sheriff Adams testified that all reports submitted by the crime lab were included in the investigative file and that defense counsel reviewed the file for thirty or forty minutes and did not request that investigators or the prosecutor provide any further information. At the pretrial hearing, Sheriff Adams stated that the crime lab had developed latent fingerprints from various items collected from the Nissan, but the August 28, 1995 report and its identification of an unidentified latent print was not specifically raised. However, there is no demonstration that the August 28, 1995 crime-lab report was not included in the investigative file at the time defense counsel was given the opportunity to review the

file, nor was there any indication that defense counsel made further inquiry on the matter following the pretrial hearing.

Even assuming that the August 28, 1995 report was not disclosed to defense counsel, the existence of an unidentified latent fingerprint on the rolling pin is neither material nor exculpatory. The United States Supreme Court held in *Brady* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. In *Strickler v. Greene*, 527 U.S. 263, 280 (1999), the Court revisited *Brady* and declared that evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Moreover, in order to obtain coram nobis relief, Hill must demonstrate that the undisclosed information would have prevented the rendition of the judgment had it been known at the time of trial. *Smith*, 2015 Ark. 188, at 4–5, 461 S.W.3d at 349.

As set forth above, the evidence presented at trial included eyewitness testimony describing the murder, as well as corroborating evidence connecting Hill to the victim during the relevant time frame and to the Nissan automobile with a trunk that was covered in blood and in which the rolling pin and a tooth that matched a tooth missing from the victim's jaw were found, along with an ashtray bearing the victim's bloody fingerprint. In view of the evidence adduced at trial, the presence of an unidentified latent print on the rolling pin fails to give rise to a reasonable probability that the disclosure of such evidence would have changed the outcome of the trial or prevented the rendition of the judgment.

While Hill alleges that the existence of this fingerprint exonerates him as well as Tatum, Hill fails to explain under what circumstances Moss would have encountered a third-party who had the opportunity to murder Moss during the time period in which Moss, Hill, and Tatum were en route to the Camden bus station. The testimony at trial established that Moss was last seen driving away in the Nissan with Hill and Tatum as the only two passengers in that car, which was the same car that contained evidence of Moss's murder. Finally, while the existence of this latent print was not presented during Hill's trial, testimony was elicited that Hill's fingerprints were not identified on any of the items recovered from the Nissan and submitted for analysis, including the rolling pin. Hill contends in his petition that the lack of forensic evidence connecting him to the murder weapon or to the Nissan establishes his innocence, but the jury found otherwise. Hill's allegations that forensic evidence is more reliable than eyewitness testimony amounts to a challenge to the evidence supporting the guilty verdict. Such allegations are not cognizable in coram nobis proceedings. *Ventress v. State*, 2015 Ark. 181, at 6, 461 S.W.3d 313, 317 (per curiam).

Hill further alleges that the prosecutor withheld evidence of unidentified hairs recovered from the Nissan, including two unidentified Caucasian hairs that are listed in handwritten notes from the Arkansas Crime Laboratory generated between August 20 and August 28, 1995. Hill attached these handwritten notes to his petition together with a typewritten report covering the same subject matter dated August 31, 1995, that listed and labeled all the hair, fiber, and other items collected from the Nissan. This report stated that, while some of the collected hairs matched the victim, other hairs could not be associated

with the victim. The report also explained that "hairs do not possess a sufficient number of unique microscopic characteristics to be positively identified as having originated from a particular person to the exclusion of others."

As stated above, discovery issues were developed at length in a pretrial hearing conducted on September 13, 1995. Testimony from this pretrial hearing revealed that the August 31, 1995 crime-lab report cited above had been specifically turned over to defense counsel, and there is no demonstration that defense counsel had not been provided with the handwritten notes that had preceded it. In view of this, Hill fails to allege sufficient facts to establish any of the elements required to prove a *Brady* violation. The presence of unidentified hairs recovered from the interior of an automobile that was likely occupied by any number of individuals had no material or exculpatory value; there is no demonstration that the evidence had been suppressed by the prosecutor; and, even assuming that the evidence had been suppressed, Hill fails to explain how it could have changed the outcome of the trial. *Larimore*, 341 Ark. at 404, 17 S.W.3d at 91. Neither has Hill met the requirements for coram nobis relief, because the allegations fail to establish the existence of facts that were not known at the time of Hill's trial and that would have prevented the rendition of the judgment. *Howard*, 2012 Ark. 177, at 4, 403 S.W.3d at 42–43.

Hill further alleges that the prosecutor suppressed a handwritten note signed by Pat Calhoun, which contains a witness statement indicating that "the victim was last seen on January 12, 1995." Assuming that this note was not disclosed to the defense, it is neither material nor exculpatory. Hill identifies Calhoun as a case coordinator with the Arkansas State Crime Laboratory. There is no demonstration that Calhoun was directly involved in

the murder investigation or in the interrogation of witnesses, and Calhoun was not called to testify at Hill's trial. More importantly, Calhoun's note does not identify either the source of the information or the name of the individual who gave the above-referenced statement. Second-hand evidence that an unidentified family member or friend last saw the victim on January 12, 1995, does not discredit statements and testimony provided by family members who were with Moss on January 17, 1995, when he agreed to drive Hill and Tatum to the bus station. Hill's allegations based on Calhoun's handwritten note fail to provide sufficient facts to establish that these notes meet the definition of material evidence in support of a *Brady* claim. *Strickler*, 527 U.S. at 280.

Hill finally alleges that the State failed to perform DNA analysis of items that contained blood, hair, and other fluids. The issue of DNA testing of the blood evidence was raised in the pretrial hearing cited above. Following that hearing, the trial court found that the defense had failed to establish that such testing would significantly enhance the case, and that there had been no request by the defense for either blood typing, blood comparisons, or DNA. Furthermore, it is clear from a review of the trial record that Hill was aware that blood, as well as hair and other items, had been collected by investigators and that no DNA analysis of those items had been made at the time of his trial. Claims concerning facts that a petitioner either could have known, or knew, at the time of trial do not provide grounds for issuance of a writ of error coram nobis. *Smith v. State*, 2016 Ark. 201, at 3–4, 491 S.W.3d 463, 466. For the reasons set forth above, Hill's allegations fail to meet his burden of establishing the existence of a fundamental error that was extrinsic to the record, which would have prevented the rendition of the judgment had it been known at

the time of trial.[2]  *Howard*, 2012 Ark. 177, at 4, 403 S.W.3d at 43.  Because Hill has failed to state sufficient grounds in support of his pro se coram nobis petition, the motion is denied.

Hill has also filed a pro se motion for writ of audita querela.  A writ of audita querela is indistinguishable from a writ of error coram nobis in that it permits a defendant to obtain relief based on allegations of newly discovered evidence following the rendition of a judgment. *See Pitts v. State*, 2016 Ark. 345, at 1, 501 S.W.3d 803, 804; *see* 7A C.J.S. *Audita Querela* section 2 (2016) (the difference between coram nobis and audita querela is largely one of timing not substance).  Citing to Rule 60(k) (2016) of the Arkansas Rules of Civil Procedure, the State argues that the writ of audita querela has been abolished in both civil and criminal cases.  However, this court has recently recognized the writ as an avenue of relief available to a petitioner challenging his criminal judgment.  *Pitts*, 2016 Ark. 345, at 1 (stating that the petitioner sought a writ of coram nobis as well as a writ of audita querela and granted the petition to seek coram nobis relief as well as other relief).  Because Hill has failed to demonstrate entitlement to coram nobis relief, his motion for similar relief in the form of a writ of audita querela is denied.

Petition denied; motion denied.

---

[2] The argument section of Hill's petition is titled "Motion for Appointment of Counsel and Petition to Reinvest Jurisdiction to File Error Coram Nobis."  To the extent that Hill intended to file a separate motion for appointment of counsel, the motion is moot because there is clearly no merit to the petition.