# SUPREME COURT OF ARKANSAS.

No. CR–14–1088

| | | |
|---|---|---|
| FRED L. WILLIAMS | | Opinion Delivered April 20, 2017 |
| | PETITIONER | |
| | | PRO SE PETITION TO REINVEST |
| V. | | JURISDICTION IN THE TRIAL |
| | | COURT TO CONSIDER A |
| | | PETITION FOR WRIT OF ERROR |
| STATE OF ARKANSAS | | CORAM NOBIS |
| | RESPONDENT | [DREW COUNTY CIRCUIT |
| | | COURT, NO. 22CR-13-43] |
| | | |
| | | PETITION DENIED. |

**PER CURIAM**

In 2014, petitioner Fred L. Williams was found guilty of murder in the first degree

and abuse of a corpse for which an aggregate sentence of life imprisonment was imposed.

Williams was sentenced as a habitual offender. We affirmed. *Williams v. State*, 2015 Ark.

316, 468 S.W.3d 776, *reh'g denied* (Oct. 29, 2015).

Now before us is Williams's pro se petition to reinvest jurisdiction in the trial court

to consider a petition for writ of error coram nobis in the case. The petition for leave to

proceed in the trial court is necessary because the trial court can entertain a petition for writ

of error coram nobis after a judgment has been affirmed on appeal only after we grant

permission. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. A writ of error coram nobis

is an extraordinarily rare remedy. *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000).

Coram nobis proceedings are attended by a strong presumption that the judgment of

conviction is valid. *Westerman v. State*, 2015 Ark. 69, at 4, 456 S.W.3d 374, 376; *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771.

The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition had it been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Newman*, 2009 Ark. 539, 354 S.W.3d 61. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Roberts*, 2013 Ark. 56, 425 S.W.3d 771. The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38.

As grounds for the writ, Williams asserts that the State suppressed exculpatory evidence. The wrongful withholding of material exculpatory evidence from the defense is a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and a ground for granting the writ. *Hooper v. State*, 2015 Ark. 108, 458 S.W.3d 229 (per curiam). The United States Supreme Court held in *Brady* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. In *Strickler v. Greene*, 527 U.S. 263 (1999), the Court revisited *Brady* and declared that evidence is material "if there is a reasonable probability that, had the evidence been

disclosed to the defense, the result of the proceeding would have been different." 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). There are three elements of a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. *Strickler*, 527 U.S. 263; *Watts v. State*, 2013 Ark. 485 (per curiam).

To assess Williams's assertion of a *Brady* violation, it is necessary to summarize the evidence adduced at trial that resulted in Williams's conviction for first-degree murder and abuse of a corpse. On April 5, 2013, Tangela Walton was observed in what appeared to be an argument with someone on her cell phone. Walton was subsequently reported missing, and police questioned Williams, her sometimes boyfriend, who denied any knowledge of her whereabouts. After having obtained Walton's cell-phone records, the police again questioned Williams, who denied that he had argued with Walton. On April 14, 2013, Williams appeared with counsel at the police station to give another statement. When the investigating officer arrived to question Williams, Williams was on the floor; he was transported to the hospital because it was reported that he had experienced a seizure. While in the emergency room, Williams admitted that he knew where Walton's body was buried. In an interview the next day, Williams stated that Walton had called him on the morning of April 5, 2013, to ask if he would like to have sex. He agreed, picked her up, and the two went to Williams's home where they engaged in "kinky" sex that included tying Walton up and placing a plastic bag over her head. Williams stated further that the two were engaging in sex for the second time when he had a seizure and "fell out" on Walton

and smothered her to death. When he was unable to revive her, Williams threw away the plastic bag and the necktie that had been used to bind her hands and buried her in a shallow grave. There was evidence presented at trial that Walton had died of asphyxia by undetermined means.

On direct appeal, Williams contended that the trial court erred by not granting his motion for directed verdict because, while the evidence was sufficient to show that Walton died in his home, the evidence was not sufficient to show that Williams purposely caused her death. He argued that the evidence adduced was circumstantial and forced the jury to resort to speculation when it found the requisite intent to convict him of first-degree murder. He also asserted that his actions when he disposed of Walton's body did not fall within the offense of abuse of a corpse. This court concluded that there was evidence adduced at trial that satisfied the elements of both first-degree murder and abuse of a corpse. We also noted that it was the jury's task to determine the credibility of the witnesses and to resolve any inconsistent evidence. *Williams*, 2015 Ark. 316, at 10, 468 S.W.3d 776, 781.

Williams enumerates several alleged "*Brady* omissions" that pertain to State's Exhibit 3, the victim's cell phone records. He contends that information contained in the exhibit was omitted from the affidavit in support of the search warrant of his residence and the arrest report; the police investigator failed to acknowledge that the police had the records on April 9, 2013, in the "report to the affiant, magistrate," and the investigating officer failed to acknowledge a "second party having communication" with Walton on April 5, 2013; the phone records in State's Exhibit 3 are "missing or suppressed"; cell-phone records in State's Exhibit 3 would have corroborated Williams's claim that he was not the person in a heated

argument with Walton on April 5, 2013, and information about the unknown caller was suppressed in the argument to the jury; the correlation of other evidence that was suppressed in State's Exhibit 3 could have supported the medical testimony concerning the time of death; the assertions of the State concerning the information contained in the exhibit were misleading because the contents of the exhibit indicated that there were questions raised by the information that were never made plain to the jury. Williams has not established a *Brady* violation.

Williams has offered no support for the claim that any of the information contained in State's Exhibit 3 could not have been known to the defense prior to trial or that it was somehow concealed from the defense. Moreover, he has offered no factual substantiation that the State had hidden any specific, particular evidence from the defense at the time of trial. Conclusory claims concerning evidence omitted from the record are deficient as a basis for coram nobis relief and do not establish that there is a reasonable probability that the outcome of the proceeding would have been different if the State had disclosed any particular evidence to the defense. *Carter v. State*, 2016 Ark. 378, at 7, 501 S.W.3d 375, 380–81 (per curiam); *see also Strickler*, 527 U.S. 263, 280; *Lacy v. State*, 2010 Ark. 388, 377 S.W.3d 227. A coram nobis proceeding is not a means merely to contradict a fact already adjudicated in the trial court. *See Stenhouse v. State*, 2016 Ark. 295, 497 S.W.3d 679 (per curiam), *cert. denied*, No. 16–7180 (U.S. Jan. 23, 2017).

It appears that Williams's allegations concerning State's Exhibit 3 rest primarily on the contention that the information contained in the exhibit was not utilized in the way most favorable to the defense. Also, even if the information in the exhibit was not known

to the defense prior to trial, Williams has not established that there is a reasonable probability that any of the information he cites in his petition would have resulted in a different outcome of the trial had it been known. When the petitioner does not demonstrate that there was information that would somehow have created an issue sufficient to affect the outcome of the trial and preclude the entry of the judgment, the petitioner has not established a ground to issue a writ of error coram nobis. *Wallace v. State*, 2015 Ark. 349, at 11, 471 S.W.3d 192, 199 (per curiam).

Williams also argues that the writ should issue on the following grounds: that a State's witness, Varetta Butcher, reported to the police that she overheard a heated argument between Walton and a party on the telephone, but the State never produced Butcher's statement, which would have aided the defense in pointing out errors in the "affidavit pretrial"; that Butcher contradicted the police officer's statement in an affidavit, but Butcher's statement never surfaced at trial, and thus her contradictory statements were not revealed to the jury; that Butcher's testimony was belied by the information contained in State's Exhibit 3, and the police officers embellished their statements to prejudice Williams; that DNA taken from material under Walton's fingernails belonged to a second individual and did not come from Williams; that the autopsy report provided that Walton's injuries showed signs of healing, but the point was suppressed at trial even though it could have provided an alibi for Williams; that the defense story of intimacy was unfairly disclaimed, and the jury's verdict was derived from perjury, fabrication, and prosecutorial misconduct.

The assertions do not demonstrate a *Brady* violation; rather, they amount to claims of trial error and seek to question the sufficiency of the evidence. To the extent that

Williams intended the claims to call into question the sufficiency of the evidence, we have repeatedly held that such a claim is a direct attack on the judgment and is not cognizable in coram nobis proceedings. *Rice v. State*, 2016 Ark. 27, at 4, 479 S.W.3d 555, 558 (per curiam). The question of the sufficiency of the evidence is to be settled at trial and on the record on direct appeal. *Id.*; *Sims v. State*, 2012 Ark. 458 (per curiam). With respect to allegations of trial error, allegations of trial error are outside the scope of a coram nobis proceeding. *Rhoades v. State*, 2015 Ark. 54, at 5, 455 S.W.3d 291, 294 (per curiam). This court does not consider allegations in a coram nobis action that are an attempt to argue issues that were, or could have been, addressed at trial or on direct appeal. *See Ventress v. State*, 2015 Ark. 181, 461 S.W.3d 313 (per curiam). Allegations of trial error, even those of constitutional dimension, do not provide a ground to grant a writ of error coram nobis. *Bean v. State*, 2015 Ark. 136 (per curiam).

Finally, Williams makes several references to the failure of his attorney to investigate evidence and counsel's failure to bring out information that would have been favorable to the defense. He has not stated a ground for the writ because a coram nobis proceeding does not provide a means to challenge the effectiveness of counsel. Ineffective-assistance-of-counsel claims are outside the purview of error coram nobis proceedings and such proceedings are not a substitute for raising ineffective-assistance-of-counsel claims under our postconviction rule, Arkansas Rule of Criminal Procedure 37.1. *White v. State*, 2015 Ark. 151, at 4–5, 460 S.W.3d 285, 288.

Petition denied.