Denver MITCHELL, Jr. *v.* STATE of Arkansas

CR 93-173                                    862 S.W.2d 254

Supreme Court of Arkansas
Opinion delivered October 4, 1993

*Jon A. Williams,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Cathy Derden,* Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Denver Mitchell, Jr. appeals his conviction for first degree murder and his sentence of life imprisonment on grounds of insufficiency of the evidence and an improper instruction on capital felony murder. We hold that the evidence to convict was substantial and that the instruction given was appropriate. Accordingly, we affirm.

The facts in this case come mainly from Mitchell's testimony at trial and a statement which he gave to the Illinois State Police. The victim, Willard Williamson, who was age 74, offered a ride to Mitchell, a hitchhiker, outside of Amarillo, Texas in August 1990. En route to Arkansas, they stopped in Russellville where Williamson cashed a traveler's check at an Exxon Tiger Mart Station between 3:00 p.m. and 7:00 p.m. on August 18, 1990. The two men then drove to Paragould where they stopped at Dan's Duck Inn. The proprietors of that Inn, Danny and Phyllis Langston, testified that this occurred on Saturday night, August 18, 1990, prior to the closing time which was 11:00 p.m. They refused to serve the men beer and told them that the restaurant was about to close and recommended another establishment. Danny Langston also recalled telling Mitchell where he could catch a bus. A patron of Dan's Duck Inn remembered Mitchell and Williamson being there on that Saturday night and also remembered the conversation between Langston and Mitchell about the bus. Mitchell does not dispute the fact that he and Williamson patronized Dan's Duck Inn, but he testified that this occurred a day earlier — on Friday night, August 17, 1990.

Mitchell testified that he and Williamson went down to a deserted area near a railroad trestle outside of Paragould and drank more beer and whiskey. At some point, both men got into the bed of the truck and continued drinking. Williamson had a tire tool with him. Hearing a noise, Mitchell turned around and testified that he saw Williamson masturbating. Williamson reached for him and Mitchell pushed him away, whereupon Williamson, again according to the appellant, swung at him with the tire tool. Mitchell did admit that he struck Williamson, but the extent of the beating was in dispute. Mitchell did tell Illinois

State Police Sergeant Kenneth Kaupas in January 1992 that he told his cousin that he beat a man in Arkansas "pretty bad." In that statement he admitted to kicking Williamson in the face. The appellant added that if Williamson died as a result of this, he "didn't mean to do it." He said that it "just got out of control." Mitchell, by his own admission, left Williamson on the ground, took his pickup truck, and fled to Illinois.

Earlier in the day on Saturday, August 18, 1990, two teenage boys — Lee Ward, age 13, and Ed Rogers, age 15, — reported to Paragould Police Officer Fred Poindexter that they had been down by the railroad trestle and had seen a "biker" carry a dead lady across the trestle. The report was made at about 5:00 p.m. Police officers investigated that night between 8:45 p.m. and 10:00 p.m., and nothing was discovered by the officers based on this information. Ward and Rogers later testified that their story was a prank.

On Sunday morning, August 19, 1990, Williamson was found at about 5:00 a.m. by police officers out by the railroad trestle on the northeast side of Paragould. His pants were down, and his penis was visible. Three beer cans and a tire tool were also found in the area. Williamson was still alive, though severely beaten. He was taken to a hospital where he later died from his injuries. Dr. Violette Hnilica, a forensic pathologist, who was formerly associate medical examiner in Arkansas, did the autopsy and later testified by deposition that Williamson died from blunt force injuries to the head that could have been caused by kicking or stomping or by a tire tool.

Lee Ward was interrogated by Paragould Police Officer Charlie Beall after Williamson died and confirmed to that police officer that Ed Rogers had beaten and choked Williamson, taken his wallet, left him with his pants down and penis exposed, and that this had made Ward physically ill. Ed Rogers also told Paragould police officers that he had hit a man once or twice with a rock down by the railroad trestle and that afterwards the man was not moving. Ed Rogers was charged with Williamson's murder.

Mitchell was subsequently arrested in Illinois in January 1992 and gave a statement to Illinois State Police Sergeant Kenneth Kaupas that he beat Williamson after Williamson made

sexual advances to him and then took his truck and left him in the field. He added that he did not intend to kill Williamson and that Williamson was alive when he left him. Mitchell was charged with capital felony murder in Arkansas and returned to the state for trial.

One week before trial, Lee Ward recanted his statement implicating Ed Rogers in the murder and said that his statement had been coerced by Officer Charlie Beall. He gave testimony to that effect at trial. Ed Rogers also testified and denied any involvement in the murder or that he saw an old man by the railroad trestle. Mitchell's defense, on the other hand, in addition to urging that he was provoked by Williamson's sexual advance was that Ed Rogers beat the victim after Mitchell fled the scene. Though the record is silent on this point, the murder charge against Ed Rogers apparently was dropped.

The jury was instructed on capital felony murder with robbery as the underlying felony and returned a verdict of first degree murder with life imprisonment.

Mitchell's primary argument on appeal is that there was insufficient evidence presented to sustain the conviction. We note, initially, on this point that though Mitchell argues error in the trial judge's denial of his motion for directed verdict following the State's case, he waived that motion by presenting subsequent evidence as part of his defense. *Rudd* v. *State*, 308 Ark. 401, 825 S.W.2d 565 (1992). Mitchell, however, did renew his motion after all evidence had been presented, and it is that motion we will consider in this appeal.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Friar* v. *State*, 313 Ark. 253, 854 S.W.2d 318 (1993). In an appeal from a denial of a motion for directed verdict, we look to see whether there is substantial evidence to support the verdict. *Friar* v. *State, supra; Davasher* v. *State*, 308 Ark. 154, 823 S.W.2d 863 (1992). Substantial evidence is evidence of sufficient force to compel a conclusion one way or the other, forcing the mind to pass beyond suspicion or conjecture. *Id*. On appeal, this court reviews the evidence in the light most favorable to the appellee. *Friar* v. *State, supra; Higgs* v. *State*, 313 Ark. 272, 854 S.W.2d 328 (1993).

In the case at bar, the evidence when viewed in the light most favorable to the State is clearly substantial. Mitchell testified at trial that he was with Williamson in Paragould, albeit on Friday night, August 17, 1990, and that they were drinking beer and whiskey. He stated that he beat Williamson, left him on the ground, and absconded with his truck. In an earlier statement to Illinois State Police Sergeant Kenneth Kaupas he admitted that he had told a cousin that he beat the man "pretty bad" and further admitted to that officer that he had kicked Williamson in the head. The former associate medical examiner, Dr. Violette Hnilica, concluded that Williamson died from blows to the head. Three witnesses at trial placed Mitchell and Williamson in Paragould on Saturday night, August 18, 1990, and a third witness placed them in Russellville earlier that same day. The jury also had an opportunity to assess Mitchell's credibility as he gave testimony in his defense and the credibility of Ed Rogers and Lee Ward. *Walker v. State*, 313 Ark. 478, 855 S.W.2d 932 (1993); *McCree v. State*, 266 Ark. 465, 585 S.W.2d 938 (1979). This evidence, taken in *toto*, readily sustains a conviction for first degree murder.

The appellant next contends that the jury was improperly instructed on capital felony murder in that there was no proof to support the underlying felony of robbery. This argument has no merit.

The capital felony murder instruction given was as follows:

First, that Denver Mitchell, Junior committed the crime of robbery and, second, that in the course of and in furtherance of that crime or in immediate flight therefrom, Denver Mitchell, Junior caused the death of Willard Williamson under circumstances manifesting an extreme indifference to the value of human life.

As a part of the charge of capital murder, the State contends that the death of Willard Williamson occurred during the commission of the crime of robbery by Denver Mitchell, Junior or in immediate flight therefrom.

This instruction corresponds with the definition of capital felony murder contained in the statute. *See* Ark. Code Ann. § 5-10-101 (1987).

Mitchell's contention is that there was no correlation between his beating Williamson and the taking of the truck and that the law requires that the murder be "in furtherance of the felony, or in immediate flight therefrom." Stated simply, he advances the argument that there is nothing in this case suggesting that he beat Williamson for the purpose of taking his truck.

We give the appellant's point little credence. If there is some evidentiary basis for a jury instruction, giving the same is appropriate. *Mitchell* v. *State*, 306 Ark. 464, 816 S.W.2d 566 (1991). We have further held that where a murder and robbery occur in close proximity to one another in time and place, the jury is justified in finding the murder and robbery to be one continuous transaction. *Owens* v. *State*, 313 Ark. 520, 856 S.W.2d 288 (1993). Those, without question, are the circumstances in the case before us. Mitchell admitted hitting Williamson, taking his truck, and fleeing to Illinois. The jury reasonably could have concluded from this that Mitchell murdered Williamson in order to steal his truck. The predicate evidence for the capital felony murder instruction existed, and the jury was properly instructed.

The record in this case has been examined under Ark. Sup. Ct. R. 4-3(h), since life imprisonment is the punishment imposed. We find no error warranting reversal.

Affirmed.