SLIP OPINION

Cite as 2015 Ark. 349

# SUPREME COURT OF ARKANSAS

No. CR–03–713

| | |
|---|---|
| TEREGINALD WALLACE<br>                              PETITIONER<br><br>V.<br><br><br>STATE OF ARKANSAS<br>                              RESPONDENT | **Opinion Delivered** October 1, 2015<br><br>SECOND PRO SE PETITION TO REINVEST JURISDICTION IN THE TRIAL COURT TO CONSIDER A PETITION FOR WRIT OF ERROR CORAM NOBIS, MOTION TO AMEND PETITION, AND MOTION FOR HEARING<br>[PULASKI COUNTY CIRCUIT COURT, NO. 60CR-02-1493]<br><br><br>PETITION DENIED; MOTION TO AMEND TREATED AS AMENDED PETITION AND DENIED; MOTION FOR HEARING MOOT. |

## PER CURIAM

In 2002, petitioner Tereginald Wallace was found guilty by a jury of murder in the first degree and sentenced as a habitual offender to 480 months' imprisonment. The Arkansas Court of Appeals affirmed. *Wallace v. State*, CR-03-713 (Ark. App. May 12, 2004) (original docket no. CACR 03-713) (unpublished) (*Wallace I*).

In 2005, Wallace filed in this court a pro se petition to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis. The petition for leave to proceed in the trial court is necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. A writ of error coram nobis is an extraordinarily rare remedy. *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000). Coram–

SLIP OPINION

nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Id*. The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Newman*, 2009 Ark. 539, 354 S.W.3d 61. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771.

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id*. A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38.

In the 2005 petition, Wallace contended that the writ should issue because the prosecution in his case had violated *Brady v. Maryland*, 373 U.S. 83 (1963). A *Brady* violation is established when material evidence favorable to the defense is wrongfully withheld by the State. *Pitts v. State*, 336 Ark. 580, 986 S.W.2d 407 (1999) (per curiam). In *Strickler v. Greene*, 527 U.S. 263 (1999), the Supreme Court revisited *Brady* and declared that, when the petitioner contends that material evidence was not disclosed to the defense, the petitioner must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280

(quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). In *Strickler*, the Court also set out the three elements of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler*, 527 U.S. 263; *see Howard*, 2012 Ark. 177, 403 S.W.3d 38. Impeachment evidence that is material, as well as exculpatory evidence, falls within the *Brady* rule. *Bagley*, 473 U.S. 667.

Wallace based his *Brady* claim on the assertion that after his trial was over, the State nolle prossed charges against Sam Thomas, who had testified against Wallace at Wallace's trial and who had said that he had made no deal with the State in exchange for his adverse testimony. Wallace argued that the State had a duty to disclose to the defense at the time of trial that a deal had been made. Wallace further contended that the existence of the deal constituted newly discovered evidence and was a violation of due process. On September 28, 2005, we denied the coram–nobis petition in a per curiam order. *Wallace v. State*, CR–03–713 (Ark. Sept. 28, 2005) (*Wallace II*).

Now before us is Wallace's second pro se petition to reinvest jurisdiction in the trial court in his case to consider a petition for writ of error coram nobis filed in this court on June 16, 2015.[1] Wallace has also filed a motion to amend the petition and a motion asking that a

---

[1]He also asks that this court vacate or modify his sentence pursuant to Arkansas Code Annotated section 16-90-111. As it is the trial court that has authority to grant any relief appropriate under the statute, we will not consider Wallace's claims for relief under section 16-90-111. *See Halfacre v. State*, 2015 Ark. 105, at 3 (per curiam).

SLIP OPINION

hearing be held on the petition. As we find no merit to the petition, it is denied. We treat the motion to amend the petition as an amended petition and also deny it. The motion for a hearing is moot.

For an understanding of Wallace's claims for the writ, it is necessary to summarize the facts of the case and the issues already raised by Wallace at trial, on direct appeal, and in his first coram-nobis petition. In 2002, the partially decomposed body of Lorenzo Petties was discovered near the Arkansas River. His hands and feet were bound, and a wire coat hanger was twisted around his neck. At trial, the State presented an eyewitness, Sam Thomas. Thomas claimed that he had observed Wallace, along with Bryan Salley and Kevin Brown, beat and strangle Petties to death. A tape recording was admitted into evidence at trial that Petties had made prior to his death in which he stated that Wallace had threatened to kill him and that he was "scared to death."

The essence of Wallace's defense was that someone else killed Petties. After the victim was found, the police questioned Thomas about the murder. Thomas implicated Wallace, Salley, and Brown, who were subsequently arrested and charged with the murder. During the interview, Thomas also stated that he had told someone named "Tatum" about what he had seen and that he had gotten a ride that night from someone named "Big Six." Wallace's defense counsel claimed that Wallace told him that Tatum was Demetrius Spencer and that Big Six was Kenneth Jordan. Jordan was found in the same cell block as Wallace in the Pulaski County jail, where he was being held on an aggravated-robbery charge. Ultimately, Jordan testified at Wallace's trial that Thomas had told him that he and Petties were "getting high in Salley's truck and he got to tripping and I grabbed the push-wire and I wrapped it

4

around his neck." Jordan said that he immediately told Thomas that he did not want to hear any further details.

Demetrius Spencer was not located prior to trial. On the first day of Wallace's trial, Spencer was shot in the chest. At the hospital, he gave a statement in which he denied that Thomas ever came to him and told him about the murder. He also claimed that someone named "Blue Boy" told him that Thomas had told him where Petties's body was located.

After the trial ended and the judgment-and-commitment order was entered, Wallace's trial counsel learned of Spencer's statement. Counsel moved for a new trial, alleging that the failure to disclose Spencer's statement constituted a *Brady* violation. The motion was denied. On appeal, Wallace argued that the trial court erred in denying him an opportunity to cross-examine Thomas about how Thomas had entered into a plea bargain in 1994 wherein an attempted-murder charge in a case would be reduced to aggravated assault. Wallace claimed that cutting off his inquiry into the circumstances surrounding Thomas's plea agreement rose to the level of a "denial of confrontation" and prevented him from challenging Thomas's credibility as a witness. He further argued that, if the jury had heard that Thomas was once believed to have committed attempted murder, the testimony of prosecution witness Kenneth Jordan that Thomas had admitted the murder to him would take "on a whole new light." The court of appeals rejected the arguments, finding that Thomas could be impeached with his aggravated-assault conviction, but not the attempted murder charge. *Wallace I*, slip op. at 7, 8.

Wallace also argued on appeal that the trial court erred in denying his motion for a continuance to find Demetrius Spencer. He claimed that he worked diligently to find

5

witnesses to corroborate Jordan's testimony and to find Spencer, contending that Spencer's second statement directly contradicted Thomas's statement to police that he had talked to "Tatum," which he asserted was "clearly exculpatory" because it undermined Thomas's credibility. The court of appeals found no error. *Wallace* I, slip op. at 5–6.

As his final point on appeal, Wallace argued that the denial of his motion for a new trial on the grounds of an alleged "Brady/Kyles/Strickler" violation was constitutional error. Wallace was referring to the duty to disclose exculpatory evidence pursuant to *Brady*, *Kyles v. Whiley*, 514 U.S. 419 (1995), and *Strickler*. Wallace asserted that Spencer was an important witness because his statement directly contradicted Thomas's claim that Thomas told him about the murder. He further claimed that Spencer gave the name of another person, "Blue Boy," who told him that Thomas knew where the body was. The court of appeals declined to reverse the judgment, noting that Wallace had the burden of proving a *Brady* violation and that he did not establish that he was prejudiced based on the facts as presented in the case. That is, Wallace failed to demonstrate, in accordance with *Lee v. State*, 340 Ark. 504, 11 S.W.3d 553 (2000), that there was a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. The court of appeals pointed to the fact that Wallace failed to show that there was any admissible evidence that Wallace could have gleaned from Spencer's testimony. *Wallace I*, slip op. at 8. Prejudice cannot be proved where the evidence cited as an alleged *Brady* violation would not have been admissible to impeach the credibility of a witness for the State. In Wallace's case, the court of appeals said that, while it is true that Spencer's statement seemed to contradict Thomas's statement to police that Thomas had told Spencer about the murder, it was clearly, as

6

presented and argued in the case, a collateral matter, and therefore not admissible for cross-examination. The court of appeals further noted that retrial is not required where the newly discovered evidence was not admissible under our rules of evidence. *Wallace I*, slip op. at 8–9. Moreover, even if the evidence had been admissible, the evidence would have been useful only to raise minor defects in a witness's testimony and would not be sufficient to create a reasonable probability that the results of the proceeding would have been different. The court further noted that Wallace's impeachment evidence, i.e., that Thomas had related some information about the murder to Blue Boy rather than Spencer, was such a minor detail that it could not have given rise to a reasonable probability that the result of the trial would have been different. *Wallace I*, slip op. at 9.

The balance of Spencer's potential testimony concerned admissions that Thomas allegedly made to Blue Boy. The court of appeals acknowledged that, had Blue Boy been able to testify as to such admissions, they would have been admissible as a statement against penal interest. Ark. R. Evid. 804(b)(3). However, Blue Boy's alleged statement to Spencer, which only concerned Thomas, was not subject to the statement-against-interest exception. Accordingly, the court of appeals could not conclude that Spencer's testimony would have had any effect on the outcome of the trial, much less that there was a reasonable probability that the outcome would have been different. *Wallace I*, slip op. at 8.

In this second coram-nobis petition, Wallace asserts as grounds for the writ that Kevin Brown confessed to Wallace's former attorney, John W. Hall, that he (Brown), Bryan Salley, and Sam Thomas actually murdered Petties. Wallace alleges that Hall did not turn over Brown's statement to him until after 2010 and that Kevin Brown was not available to testify

at his trial and could not have been discovered earlier. Wallace states that Brown admitted to him that he had given a false statement against Wallace in exchange for a twenty-five-year sentence in another case and that Brown apologized to him for being untruthful. He argues that, if he had known of Brown's statement, he would have had a credible defense. He argues that Hall's conduct amounted to ineffective assistance of counsel. As support for the assertion that Brown admitted to giving a false statement, Wallace has appended Brown's affidavit to his petition in which Brown states that, when "Sambo" Thomas was asked if Thomas knew where the body was, Thomas said it was down by the river, but that he (Brown) told an investigator for the public defender that he "didn't know nothing."

We first note that Wallace's claim that he was denied effective assistance of counsel is not a ground for the writ. This court has repeatedly held that ineffective-assistance-of-counsel claims are not cognizable in error-coram-nobis proceedings and that such proceedings are not a substitute for raising ineffective-assistance-of-counsel claims under Rule 37.1. *White v. State*, 2015 Ark. 151, at 4–5, 460 S.W.3d 285, 288.

With respect to the affidavits that Wallace has appended to this petition for coram-nobis relief, the first is signed by Johnny Brown, who states that he is also known as Blue Boy, and is dated November 17, 2009. In it, Brown avers that Sambo was involved in the murder and that he "lied against Reggie" in a deal with the prosecution whereby Sambo would not be charged in the murder. He further states that Sambo and Bryan killed "Jr. Pettus." In the second affidavit, dated January 21, 2006, Brown states that, when the victim was missing, Tatum had said that Sambo knew where the body was but that he (Brown) had told the investigator for the public defender that he knew nothing.

8

In the next affidavit, dated June 15, 2010, Kevin Williams states that he witnessed the murder, having seen Sam Thomas strangling the victim while Bryan Salley kicked him, and Brown joined in the assault. He also asserts that he remained silent because of ties to the Thomas family and his practice of not implicating others in crimes.

In an affidavit dated November 14, 2011, Malik Shakir, who Wallace states in his petition is also known as Kevin Williams, maintains that Demetrius Spencer told him that Spencer had the victim killed by Salley, Brown, and Sambo. Shakir further avers that Sally told him that Brown had entered into a plea bargain with the State in another criminal case in exchange for his statement against Wallace.

Wallace points to Hakim Malik's affidavit[2] as proof that he (Wallace) did not commit the murder. He argues that all the affidavits he has appended to the petition constitute newly discovered evidence of his innocence and are grounds for a writ of error coram nobis. Wallace argues that Brown's affidavit amounts to a "third-party confession" that Brown, Salley, and Thomas murdered the victim. He further contends that Brown's admission concerning entering into a plea bargain demonstrates the State's participation in obtaining false testimony against him.

Wallace has not stated cause to reinvest jurisdiction in the trial court to consider his coram-nobis petition. With respect to the affidavits that Wallace contends are either third-party confessions or demonstrate his innocence, the affidavits, at most, raise questions of credibility concerning Sam Thomas's trial testimony. Moreover, we have limited claims of

---

[2]In the affidavit, Hakim Malik states that he is also known as "Kevin Williams."

third-party confessions to the period before affirmance of the judgment of conviction. While there are circumstances in which a petition to reinvest the trial court with jurisdiction to hear a petition for writ of error coram nobis can be considered timely if filed *after affirmance* of a judgment, such as prosecutorial misconduct in concealing exculpatory evidence from the defense, the questions of fact, which invariably accompany an allegation of a third-party confession, demand prompt scrutiny. *Brown v. State*, 330 Ark. 627, 630, 955 S.W.2d 901, 902 (1997). The mere fact that another person has confessed to a crime cannot, alone, be grounds for relief as such confessions are not uncommon and must be approached with some skepticism. *Id.* The trial court must carefully scrutinize the complete circumstances surrounding the confession and all the available evidence. Assessing the merits of a third-party confession requires that all of the evidence be available and unimpaired by the passage of time so that the trial court's examination can be exhaustive and decisive. Our requirement that a claim of a third-party confession must be raised before affirmance serves to limit such claims to the time frame in which it is most likely that the trial court can determine with certainty whether the writ should issue. *Id.* Assertions of a third-party confession after a judgment is affirmed may be addressed to the executive branch in a clemency proceeding. *Penn v. State*, 282 Ark. 571, 670 S.W.2d 426 (1984).

As to Wallace's allegation that the contents of the affidavits amounted to newly discovered evidence that constitutes a ground for the writ, it is well settled that an allegation of newly discovered evidence in itself is not a basis for coram-nobis relief. *Thompson v. State*, 2012 Ark. 339, at 4 (per curiam). There is a distinction between fundamental error that requires issuance of the writ and newly discovered information that might have created an

issue to be raised at trial had it been known. *Mosley v. State*, 333 Ark. 273, 968 S.W.2d 612 (1998) (per curiam). Wallace has not shown that there is newly discovered evidence that would somehow have created an issue sufficient to affect the outcome of the trial and preclude the entry of the judgment. As a result, he has established no ground to issue a writ of error coram nobis.

Intertwined in Wallace's claims concerning the affidavits is the allegation that the acts of his accomplices, rather than any act by him that was proved at trial, caused the victim's death. The claim is a claim that the evidence was not sufficient to sustain the judgment of conviction. We have held that issues concerning the sufficiency of the evidence are not cognizable in coram-nobis proceedings. *Philyaw v. State*, 2014 Ark. 130 (per curiam). The question of the sufficiency of the evidence is to be settled at trial and on the record on direct appeal. *Id.*; *Sims v. State*, 2012 Ark. 458 (per curiam).

Wallace next argues that he was denied due process of law because the testimony of the witnesses at his trial did not establish that any overt act by him killed the victim. He contends that the prosecution for that reason should not have charged him with first-degree murder. He also contends that he was denied equal protection of law because his codefendants were charged with second-degree murder and have since been released on parole. As with the prior claim, the issues are not cognizable in a coram-nobis proceeding. The arguments could have been raised and settled at trial. As such, the issues are not cognizable as a ground for relief in a coram-nobis proceeding. *Howard*, 2012 Ark. 177, 403 S.W.3d 38. Even constitutional issues such as due-process and equal-protection claims that

could have been addressed at trial are not within the purview of the writ.[3] *See Watts v. State*, 2013 Ark. 485, at 7 (per curiam).

At the close of his petition, Wallace asks that he now be allowed to enter an *Alford* plea[4] on the ground that the evidence shows that he was not the person who committed the murder. A coram-nobis proceeding, however, does not provide a means to enter a plea of guilty after conviction.

Wallace also asserts that, based on the evidence, he is innocent of the offense. The claim of actual innocence, as asserted by Wallace, amounts to a challenge to the sufficiency of the evidence and a direct attack on the judgment below. As stated, we do not permit a petitioner to challenge the sufficiency of the evidence at trial in a proceeding for a writ of coram nobis. *See Taylor v. State*, 303 Ark. 586, 799 S.W.2d 519 (1990) (Claims of false or misleading testimony by witnesses at trial did not fit within the scope of a coram-nobis proceeding.).

In the motion to amend his petition, which we treat as an amended petition, Wallace repeats several of the claims in the petition concerning alleged false testimony and the lack of

---

[3]The due-process claim that the State withheld exculpatory evidence from the defense in violation of *Brady* is cognizable in a coram-nobis proceeding inasmuch as the claim is not one that could have been raised at trial. *See, e. g., Sanders v. State*, 374 Ark. 70, 285 S.W.3d 630 (2008) (holding that a petitioner's due-process claim of a *Brady* violation at trial, i.e., that the prosecution wrongfully withheld impeachment evidence of a deal between the prosecution and a trial witness, was a claim for which a writ of error coram nobis was available).

[4]Under *North Carolina v. Alford*, 460 U.S. 25 (1970), a court may accept a guilty plea from a defendant who maintains his innocence, provided the court finds an adequate factual basis for the plea of guilty. Typically, a defendant will utilize an *Alford* plea when he intelligently concludes that his interests require entry of a guilty plea in light of the evidence of actual guilt with the intention of limiting the penalty to be imposed. *See Davis v. State*, 366 Ark. 401, 235 S.W.3d 902 (2006).

SLIP OPINION

credibility of witnesses for the prosecution. He further alleges again that the prosecution's use of false testimony amounted to prosecutorial misconduct. Wallace also reiterates his assertion that Kevin Brown has confessed to the crime and that the evidence he appended to his petition constitutes newly discovered evidence. The claims were raised in the original petition, albeit in somewhat different language, and have already been fully addressed. Wallace has not stated a ground for relief.

Petition denied; motion to amend treated as amended petition and denied; motion for hearing moot.