SLIP OPINION

Cite as 2016 Ark. 400

# SUPREME COURT OF ARKANSAS.
No. CR-03-713

| | | |
|---|---|---|
| TEREGINALD WALLACE | APPELLANT | **Opinion Delivered** November 17, 2016 |
| V. | | PRO SE THIRD PETITION TO REINVEST JURISDICTION IN THE TRIAL COURT TO CONSIDER A PETITION FOR WRIT OF ERROR CORAM NOBIS |
| STATE OF ARKANSAS | | [PULASKI COUNTY CIRCUIT COURT, NO. 60CR–02–1493] |
| | APPELLEE | |
| | | PETITION DISMISSED. |

**PER CURIAM**

In 2002, a jury found petitioner Tereginald Wallace guilty of murder in the first degree and sentenced him as a habitual offender to 480 months' imprisonment. The Arkansas Court of Appeals affirmed. *Wallace v. State (Wallace I)*, CR–03–713 (Ark. App. May 12, 2004) (unpublished) (original docket no. CACR 03-713).

Now before us is Wallace's third pro se petition to reinvest jurisdiction in the trial court in the case to consider a petition for writ of error coram nobis. For an understanding of Wallace's claims for the writ in the instant petition, it is necessary to summarize the facts of the case and the issues already raised by Wallace at trial, on direct appeal, and in his first and second coram–nobis petitions.

In 2002, the body of Lorenzo Petties was discovered near the Arkansas River. His hands and feet were bound, and a wire coat hanger was twisted around his neck. At trial, the State presented an eyewitness, Sam Thomas. Thomas claimed that he had observed

Wallace, along with Bryan Salley and Kevin Brown, beat and strangle Petties to death. A tape recording was admitted into evidence at trial that Petties had made prior to his death in which he stated that Wallace had threatened to kill him and that he was "scared to death."

The essence of Wallace's defense was that someone else killed Petties. After the victim was found, the police questioned Thomas about the murder. Thomas implicated Wallace, Salley, and Brown, all of whom were subsequently arrested and charged with the murder. During the interview, Thomas also stated that he had told someone called "Tatum" about what he had seen and that he had gotten a ride that night from someone called "Big Six." Wallace's defense counsel said that Wallace told him that Tatum was Demetrius Spencer and that Big Six was Kenneth Jordan. Jordan was located by the defense in the same cell block as Wallace in the Pulaski County jail. Ultimately, Jordan testified at Wallace's trial that Thomas had told him that Thomas and Petties were "getting high in Salley's truck and he got to tripping and I grabbed the push-wire and I wrapped it around his neck." Jordan said that he immediately told Thomas that he did not want to hear any further details.

Demetrius Spencer was not located prior to trial. On the first day of Wallace's trial, Spencer was shot in the chest. At the hospital, he gave a statement in which he denied that Thomas ever came to him and told him about the murder. He also claimed that someone known as "Blue Boy" told him that Thomas had told him where Petties's body was located.

After the trial ended and the judgment-and-commitment order was entered, Wallace's trial counsel learned of Spencer's statement. Counsel moved for a new trial,

SLIP OPINION

alleging that the failure to disclose Spencer's statement constituted a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The motion was denied.

A *Brady* violation is established when material evidence favorable to the defense is wrongfully withheld by the State. *Pitts v. State*, 336 Ark. 580, 986 S.W.2d 407 (1999) (per curiam). In *Strickler v. Greene*, 527 U.S. 263 (1999), the Supreme Court revisited *Brady* and declared that, when the petitioner contends that material evidence was not disclosed to the defense, the petitioner must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

In *Strickler*, the Court also set out the three elements of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler*, 527 U.S. 263; *see Howard*, 2012 Ark. 177, 403 S.W.3d 38. Impeachment evidence that is material, as well as exculpatory evidence, falls within the *Brady* rule. *Bagley*, 473 U.S. 667.

On direct appeal, Wallace argued that the trial court erred in denying him an opportunity to cross-examine Thomas about how Thomas had entered into a plea bargain in 1994 wherein an attempted-murder charge in a case would be reduced to aggravated assault. Wallace claimed that cutting off his inquiry into the circumstances surrounding Thomas's plea agreement rose to the level of a "denial of confrontation" and prevented him

SLIP OPINION

from challenging Thomas's credibility as a witness. He further argued that, if the jury had heard that Thomas was once believed to have committed attempted murder, the testimony of prosecution witness Kenneth Jordan that Thomas had admitted the murder to him would take "on a whole new light." The court of appeals rejected the arguments, finding that Thomas could be impeached with his aggravated-assault conviction, but not the attempted-murder charge. *Wallace I*, slip op. at 7, 8.

Wallace also argued on appeal that the trial court erred in denying his motion for a continuance to find Demetrius Spencer. He claimed that he worked diligently to find witnesses to corroborate Jordan's testimony and to find Spencer, contending that Spencer's second statement directly contradicted Thomas's statement to police that he had talked to Tatum, which he asserted was "clearly exculpatory" because it undermined Thomas's credibility. The court of appeals found no error. *Wallace I*, slip op. at 5–6.

As his final point on appeal, Wallace argued that the denial of his motion for a new trial on the grounds of an alleged "*Brady/Kyles/Strickler*" violation was constitutional error. Wallace was referring to the duty to disclose exculpatory evidence pursuant to *Brady*, *Kyles v. Whiley*, 514 U.S. 419 (1995), and *Strickler*. Wallace asserted that Spencer was an important witness because his statement directly contradicted Thomas's claim that Thomas told him about the murder. He further claimed that Spencer gave the name of another person, Blue Boy, who told him that Thomas knew where the body was. The court of appeals declined to reverse the judgment, noting that Wallace had the burden of proving a *Brady* violation and that he did not establish that he was prejudiced based on the facts as presented in the

case. That is, Wallace failed to demonstrate, in accordance with *Lee v. State*, 340 Ark. 504, 11 S.W.3d 553 (2000), that there was a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. The court of appeals pointed to the fact that Wallace failed to show that there was any admissible evidence that Wallace could have gleaned from Spencer's testimony. *Wallace I*, slip op. at 8. Prejudice cannot be proved where the evidence cited as an alleged *Brady* violation would not have been admissible to impeach the credibility of a witness for the State. In Wallace's case, the court of appeals said that, while it is true that Spencer's statement seemed to contradict Thomas's statement to police that Thomas had told Spencer about the murder, it was clearly, as presented and argued in the case, a collateral matter, and therefore not admissible for cross-examination. The court of appeals further noted that retrial is not required where the newly discovered evidence is not admissible under our rules of evidence. *Wallace I*, slip op. at 8–9. Moreover, even if the evidence had been admissible, the evidence would have been useful only to raise minor defects in a witness's testimony and would not be sufficient to create a reasonable probability that the results of the proceeding would have been different. The court further noted that Wallace's impeachment evidence, i.e., that Thomas had related some information about the murder to Blue Boy rather than Spencer, was such a minor detail that it could not have given rise to a reasonable probability that the result of the trial would have been different. *Wallace I*, slip op. at 9.

The balance of Spencer's potential testimony concerned admissions that Thomas allegedly made to Blue Boy. The court of appeals acknowledged that, had Blue Boy been

5

SLIP OPINION

able to testify as to such admissions, they would have been admissible as a statement against penal interest. Ark. R. Evid. 804(b)(3) (2015). However, Blue Boy's alleged statement to Spencer, which only concerned Thomas, was not subject to the statement-against-interest exception. Accordingly, the court of appeals could not conclude that Spencer's testimony would have had any effect on the outcome of the trial, much less that there was a reasonable probability that the outcome would have been different. *Wallace I*, slip op. at 8.

In 2005, Wallace filed in this court his first pro se petition to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis. The petition for leave to proceed in the trial court was necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. A writ of error coram nobis is an extraordinarily rare remedy. *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000). Coram-nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Id.* The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Newman*, 2009 Ark. 539, 354 S.W.3d 61. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771.

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* A writ of error coram nobis is available

6

SLIP OPINION

to address certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38.

In the 2005 petition, Wallace contended that the writ should issue because the prosecution in his case had violated *Brady*. Wallace based his *Brady* claim on the assertion that after his trial was over, the State nolle prossed charges against Sam Thomas, who had testified against Wallace at Wallace's trial and who had said that he had made no deal with the State in exchange for his adverse testimony. Wallace argued that the State had a duty to disclose to the defense at the time of trial that a deal had been made. Wallace further contended that the existence of the deal constituted newly discovered evidence and was a violation of due process. On September 28, 2005, we denied the coram-nobis petition in a per curiam order. *Wallace v. State (Wallace II)*, CR–03-713 (Ark. Sept. 28, 2005) (unpublished per curiam).

In 2015, Wallace filed his second coram-nobis petition here, asserting as grounds for the writ that Kevin Brown had confessed to Wallace's former attorney, John W. Hall, that it was actually he (Brown), Bryan Salley, and Sam Thomas who murdered the victim. Wallace alleged that Hall did not turn over Brown's statement to him until after 2010 and that Kevin Brown was not available to testify at his trial, and the statement could not have been discovered earlier. Wallace stated that Brown admitted to him that he had given a false statement against Wallace in exchange for a twenty-five-year sentence in another case

7

and that Brown apologized to him for being untruthful. He argued that, if he had known of Brown's statement, he would have had a credible defense. He argued that Hall's conduct amounted to ineffective assistance of counsel. As support for the assertion that Brown admitted giving a false statement, Wallace appended Brown's affidavit to his petition in which Brown stated that, when "Sambo" Thomas was asked if Thomas knew where the body was, Thomas said it was down by the river, but that he (Brown) told an investigator for the public defender that he "didn't know nothing."

We denied the petition. *Wallace v. State (Wallace III)*, 2015 Ark. 349, 471 S.W.3d 192 (per curiam). We first noted that Wallace's claim that he was denied effective assistance of counsel is not a ground for the writ. *Wallace III*, 2015 Ark. 349, at 8, 471 S.W.3d 192, 198. This court has repeatedly held that ineffective-assistance-of-counsel claims are not cognizable in error-coram-nobis proceedings and that such proceedings are not a substitute for raising ineffective-assistance-of-counsel claims under Arkansas Rule of Criminal Procedure 37.1. *White v. State*, 2015 Ark. 151, at 4, 460 S.W.3d 285, 288.

With respect to the affidavits of Johnny Lee Brown (Blue Boy), Kevin X. Williams (Hakim Malik), and Malik Shakir that Wallace appended to his second petition for coram-nobis relief, we held that the affidavits, which Wallace contended were either third-party confessions or demonstrated his innocence, at most, raised questions of credibility concerning Sam Thomas's trial testimony. Moreover, this court has limited error-coram-nobis relief on claims of third-party confessions to those claims made within the period before affirmance of the judgment of conviction. While there are circumstances in which

8

a petition to reinvest the trial court with jurisdiction to hear a petition for writ of error coram nobis can be considered timely if filed after affirmance of a judgment, such as prosecutorial misconduct in concealing exculpatory evidence from the defense, the questions of fact, which invariably accompany an allegation of a third-party confession, demand prompt scrutiny. *Brown v. State*, 330 Ark. 627, 630, 955 S.W.2d 901, 902 (1997). The mere fact that another person has confessed to a crime cannot, alone, be grounds for relief, for such confessions are not uncommon and must be approached with some skepticism. *Id.* The trial court must carefully scrutinize the complete circumstances surrounding the confession and all the available evidence. Assessing the merits of a third-party confession requires that all of the evidence be available and unimpaired by the passage of time so that the trial court's examination can be exhaustive and decisive. Our requirement that a claim of a third-party confession must be raised before affirmance serves to limit such claims to the time frame in which it is most likely that the trial court can determine with certainty whether the writ should issue. *Id.* Assertions of a third-party confession after a judgment is affirmed may be addressed to the executive branch in a clemency proceeding. *Penn v. State*, 282 Ark. 571, 670 S.W.2d 426 (1984).

As to Wallace's allegation that the contents of the affidavits amounted to newly discovered evidence that constitutes a ground for the writ, this court noted when it denied the second petition that it is well settled that an allegation of newly discovered evidence in itself is not a basis for coram-nobis relief. *Thompson v. State*, 2012 Ark. 339, at 4 (per curiam). There is a distinction between fundamental error that requires issuance of the writ

9

and newly discovered information that might have created an issue to be raised at trial had it been known. *Mosley v. State*, 333 Ark. 273, 968 S.W.2d 612 (1998) (per curiam). Wallace did not show that there was newly discovered evidence that would somehow have created an issue sufficient to affect the outcome of the trial and preclude the entry of the judgment. As a result, he established no ground to issue a writ of error coram nobis. *Wallace III*, 2015 Ark. 349, at 11, 471 S.W.3d 192, 199.

Intertwined with Wallace's claims concerning the affidavits was the allegation that the acts of his accomplices, rather than any act by him that was proven at trial, caused the victim's death. This court found that the claim was that the evidence was not sufficient to sustain the judgment of conviction. We have held that issues concerning the sufficiency of the evidence are not cognizable in coram-nobis proceedings. *Philyaw v. State*, 2014 Ark. 130 (per curiam). The question of the sufficiency of the evidence is to be settled at trial and on the record on direct appeal. *Id.*; *Sims v. State*, 2012 Ark. 458 (per curiam).

Wallace also argued that there was error committed at this trial. We denied relief because the arguments could have been raised and settled at trial. As such, the issues were not cognizable as a ground for relief in a coram-nobis proceeding. *Howard*, 2012 Ark. 177, 403 S.W.3d 38. Even constitutional issues such as due-process and equal-protection claims that could have been addressed at trial are not within the purview of the writ. *See Watts v. State*, 2013 Ark. 485, at 7 (per curiam).

In this third petition, Wallace repeats the claims raised in the first two petitions. As this court has already considered those claims and denied relief based on them, we decline

to consider them again and dismiss the petition as an abuse of the writ. When a petitioner files a successive application for coram nobis relief in this court, it is an abuse of the writ to argue the same claims that have been addressed if the petitioner does not allege new facts that are sufficient to distinguish his latest claims from the prior claims. *Jackson v. State*, 2016 Ark. 294, at 4 (per curiam).

Wallace has again submitted affidavits from Kevin Williams and Malik Shakir, but there is no fact alleged sufficient to distinguish to any significant degree his claims in the instant petition from the claims raised in his previous petitions. Wallace did not establish in his two prior petitions that there was any basis for the writ, and his reassertion of largely the same claims in the third petition is a misuse of the remedy. *See Smith v. State*, 2015 Ark. 188, 461 S.W.3d 345 (per curiam). Accordingly, the petition is subject to dismissal. *See Rodgers v. State*, 2013 Ark. 294, at 3–4 (per curiam) ("[A] court has the discretion to determine whether the renewal of a petitioner's application for the writ, when there are additional facts presented in support of the same grounds, will be permitted."). Due process does not require this court to entertain an unlimited number of petitions to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis in a particular case. *Jackson v. State*, 2016 Ark. 294, at 5; *see also Swanigan v. State*, 2016 Ark. 109, 485 S.W.3d 695 (per curiam).

One of the affidavits appended to this third petition is that of Calvin Sims, who did not submit an affidavit with the second petition. Sims avers that Demetrius Spencer told him that he had paid Kevin Brown, Bryan Salley and "Sambo" to kill Lorenzo Petties. He

11

further avows that Brown "told me the same thing Demetrious told me that he, Sambo, and Bryan Salley killed Lorenzo for Demetrious Spencer and he paid them real well." As with the other affidavits, Sims's affidavit does not state a ground for the writ because Sims's affidavit merely challenges the credibility of Sam Thomas's trial testimony. Sims does not claim that any information he possessed was hidden from the defense, and the affidavit does not add any new facts to the coram-nobis petition that distinguishes it from the claims in the earlier two petitions. The fact that Sims states that Spencer was untruthful is not, in and of itself, cause for issuance of the writ. *See Wallace III*, 2015 Ark. 349, at 9, 471 S.W.3d at 198. Even when an actual witness recants his testimony after trial, the recantation, standing alone, is not cognizable in an error–coram–nobis proceeding. *Anderson v. State*, 2012 Ark. 270, 423 S.W.3d 20 (per curiam) (citing *Jackson v. State*, 2010 Ark. 81 (per curiam)); *Smith v. State*, 200 Ark. 767, 140 S.W.2d 675 (1940) (holding that the writ was not available to afford relief on the ground that the principal witness against the accused had recanted and that others since the accused's conviction had confessed to the crime); *see also McArthur v. State*, 2014 Ark. 367, at 5, 439 S.W.3d 681, 684 (per curiam), *cert. denied*, 135 S. Ct. 1432 (2015); *Taylor v. State*, 303 Ark. 586, 799 S.W.2d 519 (1990) (A witness's recantation of part of his trial testimony was not a ground for the writ as recantation of testimony did not fit within the remedy.).

As he did in prior coram-nobis petitions, Wallace asserts that, based on the evidence adduced at trial and based on the affidavits offered in support of his petition, he has demonstrated that he is innocent of the offense. The claim of actual innocence, as asserted

by Wallace, amounts to a challenge to the sufficiency of the evidence and is a direct attack on the judgment below.  As such, the claim is not cognizable in a proceeding for a writ of error coram nobis.  *Rice v. State*, 2016 Ark. 27, at 4, 479 S.W.3d 555, 558 (per curiam).

Petition dismissed.