SLIP OPINION

Cite as 2017 Ark. 167

# SUPREME COURT OF ARKANSAS.
No. CR-93-173

| | |
|---|---|
| DENVER MITCHELL, JR.<br><div align="right">PETITIONER</div><br>V.<br><br>STATE OF ARKANSAS<br><div align="right">RESPONDENT</div> | **Opinion Delivered** May 4, 2017<br><br>PRO SE PETITION TO REINVEST JURISDICTION IN THE TRIAL COURT TO CONSIDER A PETITION FOR WRIT OF ERROR CORAM NOBIS AND MOTIONS FOR APPOINTMENT OF COUNSEL, TO FILE SUPPLEMENTAL PETITION, AND TO PROCEED IN FORMA PAUPERIS<br>[GREENE COUNTY CIRCUIT COURT, NO. 28CR-92-2]<br><br><br>PETITION DENIED; MOTIONS MOOT. |

**PER CURIAM**

In 1992, petitioner Denver Mitchell, Jr., was found guilty by a jury of first-degree murder in the beating death of Willard Williamson and sentenced to life imprisonment. We affirmed. *Mitchell v. State*, 314 Ark. 343, 862 S.W.2d 254 (1993).

On February 21, 2017, Mitchell filed in this court a pro se petition to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis in the case and motions for appointment of counsel and to proceed in forma pauperis. He subsequently filed a second motion seeking appointment of counsel and for leave to file a supplemental petition for writ of error coram nobis. We deny the petition. Accordingly, the motions are moot.

SLIP OPINION

The petition for leave to proceed in the trial court is necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. A writ of error coram nobis is an extraordinarily rare remedy. *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000). Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Green v. State*, 2016 Ark. 386, 502 S.W.3d 524; *Westerman v. State*, 2015 Ark. 69, at 4, 456 S.W.3d 374, 376; *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771. The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Newman*, 2009 Ark. 539, 354 S.W.3d 61. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Roberts*, 2013 Ark. 56, 425 S.W.3d 771.

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38. We are not required to accept the allegations in a petition for writ of error coram nobis at face value. *Smith v. State*, 2015 Ark. 188, at 4, 461 S.W.3d 345, 349 (per curiam).

SLIP OPINION

As one ground for issuance of the writ, Mitchell contends that he was denied effective assistance of counsel at his trial and on direct appeal. The claim is not cognizable in a petition for the writ. This court has repeatedly held that ineffective-assistance-of-counsel allegations are not within the purview of the writ. *Green*, 2016 Ark. 386, 502 S.W.3d 524; *White v. State*, 2015 Ark. 151, 460 S.W.3d 285. Claims of ineffective assistance of counsel are properly raised in a timely petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1 (2016). *Mason v. State*, 2014 Ark. 288, 436 S.W.3d 469 (per curiam). A petition for writ of error coram nobis is not a substitute for raising an issue under Rule 37.1. *Travis v. State*, 2014 Ark. 82 (per curiam).

Mitchell also argues that he is actually innocent of the offense of which he was convicted and that the writ should issue because the trial court made errors in his trial and the evidence adduced at trial was contradictory and insufficient to sustain the judgment. As with Mitchell's claims that he was not afforded effective counsel, the assertions do not establish a ground for the writ because they constitute a direct attack on the judgment. *See Wallace v. State*, 2016 Ark. 400, at 12–13, 503 S.W.3d 754, 761 (per curiam) (holding that a claim of actual innocence that amounts to a challenge to the sufficiency of the evidence is a direct attack on the judgment below and not cognizable in a proceeding for a writ of error coram nobis).

By its very nature, an issue concerning a trial court's rulings at trial could have been settled in the trial court and on the record on direct appeal. Accordingly, the allegation that the trial court made some mistake in its rulings is not cognizable in a coram nobis proceeding. *Mason*, 2014 Ark. 288, 436 S.W.3d 469. Likewise, a challenge to the

sufficiency of the evidence is not within the scope of a coram nobis proceeding because the question of the sufficiency of the evidence is to be settled at trial and on the record on direct appeal. *Philyaw v. State*, 2014 Ark. 130 (per curiam).

The sole claim in Mitchell's coram nobis petition that is cognizable as a basis for the writ is his allegation that the State, through the conduct of the police, suppressed exculpatory evidence. The wrongful withholding of material exculpatory evidence from the defense is a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and a ground for granting the writ. *Hooper v. State*, 2015 Ark. 108, 458 S.W.3d 229 (per curiam). The rule set out in *Brady* also encompasses evidence known only to police investigators and not to the prosecutor. *Howard*, 2012 Ark. 177, at 10, 403 S.W.3d at 45.

The United States Supreme Court held in *Brady* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. In *Strickler v. Greene*, 527 U.S. 263 (1999), the Court revisited *Brady* and declared that evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). There are three elements of a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. *Strickler*, 527 U.S. 263; *Watts v. State*, 2013 Ark. 485 (per curiam).

To understand Mitchell's *Brady* claims, it is necessary to summarize the evidence adduced at trial, much of which comes from Mitchell's testimony. Mitchell testified that he was hitchhiking in Texas when Williamson offered him a ride. The two drove to Paragould where they stopped at Dan's Duck Inn on the night of Friday, August 17, 1990. One of the proprietors of the restaurant, Dan Langston, testified that he recalled the men's presence at the restaurant late on the night of Saturday, August 18, 1990, a few hours before the restaurant was set to close at 11:00 p.m. Langston's wife testified that she was unsure on which night the men were there, but another witness testified in agreement with Langston that it was August 18, 1990, because she remembered having written down that she was to attend a reception on the evening of Friday, August 17, 1990. A gas-station attendant testified that she recalled taking a check from Williamson and writing the date of August 18, 1990, on it, although she said on cross-examination that it was possible that she was mistaken.

Mitchell further testified that he and Williamson had been drinking alcohol and drove to a deserted area outside Paragould near a railroad trestle and continued drinking. Mitchell said that when Williamson exposed his genitals and made sexual advances to him, he pushed Williamson away, and Williamson swung at him with a tire tool. Mitchell admitted fighting with Williamson and leaving him bleeding and unconscious, but he disputed the severity of the beating. Mitchell testified that he took Williamson's truck and fled to Illinois, where he drove the truck to a swampy area and abandoned it. He subsequently gave a statement to a police investigator in Illinois in January 1992 in which he said that he had told his cousin that he beat a man in Arkansas "pretty bad" and kicked

him in the face but that he did not intend to kill the man. A tape recording of the statement was admitted into evidence at Mitchell's trial. In his trial testimony, Mitchell admitted kicking Williamson in the face, slapping him twice, and hitting him with his fist twice, but he said that he did not recall striking him with the tire tool.

On the morning of Sunday, August 19, 1990, Williamson, severely beaten but still alive, was found in the area of the trestle by police officers using a search dog. Williamson's genitals were exposed. Beer cans and a tire tool were found in the area. Williamson was taken to a hospital where he died about twelve days later. A forensic pathologist testified that Williamson died of blunt-force injuries to the head that fractured his mandible and which could have been caused by kicking, stomping, or striking with a tire tool.

On August 18, 1990, at about 5:00 p.m., two boys, Lee Ward, aged thirteen, and Ed Rogers, aged fifteen, had reported to a friend of theirs, Jerry Montgomery, that they had seen a man dragging a dead woman across the trestle. Montgomery further testified that he had gone to the trestle to look around at about the time the sun was setting on August 18 but found nothing and could not recall seeing any beer cans. The boys' account of seeing the man with the woman was reported that evening to the Paragould police, who conducted a search of the area but also found nothing that night.

Williamson was found near the trestle on the morning of Sunday, August 19, 1990, and Ward subsequently told the police that Rogers had beaten and choked Williamson and had stolen his wallet. When Rogers was interrogated, he said that he had hit a man once or twice with a rock near the trestle because the man had made sexual advances toward him. Rogers was later charged with Williamson's murder. Shortly before Rogers's trial was to

begin, Ward recanted his statement implicating Rogers, contending that his statement had been coerced by a police officer. Rogers also denied that he had struck Williamson. We noted on direct appeal that, although the record was silent on the point, the charges against Rogers were apparently dropped. Mitchell was charged with Williamson's murder after his interrogation in Illinois in 1992.

Ward and Rogers testified at Mitchell's trial that their story was a prank intended to play a joke on Montgomery, who was gullible. Mitchell's defense counsel, in addition to arguing that Mitchell had been provoked by Williamson's sexual advances, argued that Rogers had beaten Williamson after Mitchell fled the scene. In our review of the sufficiency of the evidence on direct appeal, we pointed out that the jury had the opportunity to assess Mitchell's credibility and that of Ward and Rogers. *Mitchell*, 314 Ark. at 348, 862 S.W.2d at 257, (citing *Walker v. State,* 313 Ark. 478, 855 S.W.2d 932 (1993)) (holding that it was the responsibility of the jury to determine credibility, and the jury was not required to believe the testimony of any witness). To the extent that Mitchell intended the assertions in his coram nobis petition pertaining to whether the testimony of any witness was credible to be a ground for the writ, the presentation of evidence that attacks the credibility of a witness at trial constitutes a direct attack on the judgment. *Rice v. State*, 2016 Ark. 27, at 4, 479 S.W.3d 555, 558 (per curiam); *see also Malone v. State*, 294 Ark. 127, 741 S.W.2d 246 (1987). As such, the claims are not a ground for the writ. *Id.* We held on direct appeal that the evidence adduced at trial, taken in its totality in the light most favorable to the State, was clearly substantial and readily sustained Mitchell's conviction for first-degree murder. *Mitchell*, 314 Ark. at 348, 862 S.W.2d at 257. A coram nobis proceeding does not provide

a means to challenge that determination. *See Ventress v. State*, 2015 Ark. 181, 461 S.W.3d 313 (per curiam).

The *Brady* violations alleged by Mitchell are (1) the police suppressed evidence that Ed Rogers was in possession of Williamson's wallet after "he led them to the victim and admitted beating him": and (2) the police suppressed evidence that Dan Langston had told police that he did not know what night it was that he saw Mitchell and Williamson, which was in direct conflict with Langston's testimony at trial.

In support of his *Brady* claims, Mitchell has appended to his petition a number of affidavits, letters, transcripts of interviews with the police, information concerning a recommendation by the parole board that his sentence be commuted to a term of years, and newspaper articles concerning the murder of Williamson that express doubt about Mitchell's guilt. The affidavits are statements of the affiants' beliefs that Mitchell was not in Arkansas when the crime was committed, that Mitchell was wrongfully convicted, and that Mitchell was not afforded effective assistance of counsel at trial. The letters and articles raise concerns similar to those in the affidavits, question the reliability of the evidence, and generally question the unusual circumstances that resulted in Rogers having first been charged with the murder.

The writ of error coram nobis does not lie to correct an issue of fact that has been adjudicated, even though it may have been wrongly determined, and it does not lie to address alleged false testimony at trial. *Anderson v. State*, 2017 Ark. 44, 510 S.W.3d 755 (per curiam); *Chatmon v. State*, 2015 Ark. 417, 473 S.W.3d 542 (per curiam). Mitchell has provided no specific substantiation that the State, through the conduct of the police, knew

at the time of trial, but suppressed the information, that Williamson's wallet had been found in Rogers's possession, that Rogers himself led the police to Williamson's body, or that Don Langston did not know the exact date on which he saw Mitchell and Williamson. Affidavits, letters, and newspaper articles questioning the judgment against Mitchell are not proof that exculpatory information was concealed from the defense at trial. Again, when considering the allegations in a coram nobis petition, we are not required to accept the allegations in the petition at face value.

Mitchell also alleges that the police were in possession of Williamson's driver's license, and he suggests that this indicates that the police had possession of the wallet even though no wallet was found at the scene or logged into the police department records. Mitchell appended to his petition transcripts of the police interrogation of Ward and Rogers in which each incriminated Rogers in the beating of Williamson. In Ward's statement, he said that Rogers had taken Williamson's wallet after choking and beating him. Counsel for Mitchell cross-examined both Ward and Rogers concerning their recantation of their original statements, including their statements regarding the wallet, and both testified that the story was entirely untrue. In his statement to the Illinois authorities, Mitchell said that he had never seen Williamson with a wallet and that Williamson had kept all "checks and everything in the glove box."

At trial, the defense proffered the testimony of Williamson's daughter and her husband that they had been informed by the police that Rogers had the wallet in his possession when he was taken into custody and that the police had accurately described the wallet. The proffered testimony indicates that the defense was aware at the time of trial that

there was an issue about whether the wallet had been found. As stated above, to warrant a writ of error coram nobis, a petitioner has the burden of bringing forth some fact, extrinsic to the record, that was not known at the time of trial. *Smith*, 2015 Ark. 188, 461 S.W.3d 345. Mitchell did not demonstrate that there was an exculpatory fact outside the record that could not have been known at the time of the trial because it was concealed by the State.

With respect to Mitchell's allegation that the police were aware that Dan Langston, contrary to his testimony at trial, did not know the date on which he saw Mitchell and Williamson, Langston was questioned at trial concerning his memory of the date that he encountered Mitchell and Williamson. Coram nobis proceedings are not a means to refute trial testimony; but even if a witness has recanted his trial testimony, it is well settled that a claim of recanted testimony, standing alone, is not cognizable in an error coram nobis proceeding. *Stenhouse v. State*, 2016 Ark. 295, 497 S.W.3d 679 (per curiam); *see also Smith v. State*, 200 Ark. 767, 140 S.W.2d 675 (1940) (holding that the writ was not available to afford relief on the ground that the principal witness against the accused had recanted and that others since the accused's conviction had confessed to the crime). This is so because a writ of error coram nobis may not be used to contradict any fact already adjudicated or to readjudicate an issue. *See Carter v. State*, 2016 Ark. 448, at 5, 506 S.W.3d 823, 827 (per curiam); *Smith*, 200 Ark. at 768, 140 S.W.2d at 676.

Mitchell has not met his burden of establishing that there existed some fact that would have prevented rendition of the judgment in his case if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before

rendition of judgment. *McFerrin v. State*, 2012 Ark. 305 (per curiam); *Cloird v. State*, 2011 Ark. 303 (per curiam). Because the petition does not demonstrate a fundamental error of fact extrinsic to the record, the allegations advanced by Mitchell do not warrant reinvesting jurisdiction in the trial court to consider a coram nobis petition. *See McArthur v. State*, 2014 Ark. 367, at 2, 439 S.W.3d 681, 683 (per curiam). As the petition is without merit, there is no cause to appoint an attorney to represent Mitchell, and his motions for appointment of counsel and to proceed in forma pauperis are moot.

Finally, the State urges this court to hold that Mitchell has failed to exercise due diligence in bringing this coram nobis petition. We have consistently held that due diligence is required in making application for coram nobis relief, and, in the absence of a valid excuse for delay, the petition can be denied on that basis alone. *See Cloird*, 357 Ark. 446, 182 S.W.3d 477. This court will itself examine the diligence requirement and deny a petition where it is evident that a petitioner failed to proceed diligently. *Roberts*, 2013 Ark. 56, at 12, 425 S.W.3d 771, 778. Due diligence requires that (1) the defendant be unaware of the fact at the time of trial; (2) the defendant could not have, in the exercise of due diligence, presented the fact at trial; and (3) upon discovering the fact, the defendant did not delay bringing the petition. *Grant v. State*, 2016 Ark. 82, at 5–6, 484 S.W.3d 272, 276 (per curiam). The judgment in Mitchell's case was affirmed in 1993; yet, he did not bring his petition for more than twenty-three years, and he has not shown in his petition that he exercised due diligence in raising his claims for coram nobis relief.

Petition denied; motions moot.